**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | **Case No. 1:14-cv-10318** |
| **In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation** | ) | **This filing relates to:** **1:15-cv-06718** **1:15-cv-01256** **1:15-cv-01568** **1:16-cv-00803** **1:16-cv-11164** **1:17-cv-01413** **1:17-cv-01568** |
| | ) | **Judge Joan B. Gottschall** |
| | ) | **Magistrate Judge Michael T. Mason** |

**DEFENDANTS' RESPONSE TO DIRECT ACTION PLAINTIFFS' RENEWED JOINT MOTION FOR SEPARATE DISCOVERY AND TRIAL SCHEDULE**

Pursuant to this Court's October 24, 2017 Minute Order (Dkt. #326), Navistar, Inc. and Navistar International Corporation (collectively "Defendants") respond as follows to the Renewed Joint Motion for Separate Discovery and Trial Schedule (Dkt. #331) (the "Motion") of so-called "Direct Action Plaintiffs."

## I. INTRODUCTION

Direct Action Plaintiffs seek to unravel a pretrial process that has been in place for nearly three years because they apparently believe that doing so would be strategically advantageous for them and only them. Direct Action Plaintiffs want all the benefits of the consolidated multidistrict litigation ("MDL") proceedings without any of the burdens. They want access to hundreds of thousands of documents produced by Defendants. They want dozens of deposition transcripts (and the work-product of the attorneys who chose the exhibits). They want Named Plaintiffs' expert reports and Defendants' expert reports. But Direct Action Plaintiffs – quite suddenly – do not want to wait for the MDL discovery process to be completed, even though

none of the Direct Action Plaintiffs objected to inclusion in the MDL, and the nature of an MDL is to emphasize efficiency by focusing on pretrial matters common to all plaintiffs. Direct Action Plaintiffs want to pursue whatever discovery they choose, right now.

Worse, Direct Action Plaintiffs propose a schedule that would keep Defendants from taking the discovery they need. Defendants are at ground zero when it comes to taking discovery from most of the Direct Action Plaintiffs, yet Defendants propose **five months of discovery for all seven lawsuits**. Fact discovery in state "direct action" cases pending in other courts typically has extended a year or even two. There is no way, however, Defendants can get the discovery they need from seven Direct Action Plaintiffs (representing over 1,100 trucks) in five months, even if Defendants had nothing else to do.[1] The Motion deliberately seeks to shield Direct Action Plaintiffs from meaningful discovery.

Direct Action Plaintiffs' Motion also is a sword that includes deadlines impossible for Defendants to meet. The Motion proposes all seven trials in December 2018.[2] It proposes that Defendants receive expert reports in seven cases on the same day and then turn rebuttal reports in one month. (The MDL gives Defendants two months to respond to one set of reports, but Direct Action Plaintiffs cut Defendants' time for seven sets of reports to one month.). And so on.

Moreover, the Motion on its face is inefficient. No process that calls for simultaneous separate discovery can be efficient. (That is why we have an MDL.). Direct Action Plaintiffs

---

[1] As this Court knows after recent extension of the fact discovery schedule, Defendants have plenty left to do to complete MDL pretrial matters. And if the Court grants the pending motion for leave to amend the First Amended Consolidated Class Action Complaint and add six new plaintiffs (Dkt. #313), that change combined with the relief sought in the Motion at bar would require Defendants to take discovery from **thirteen** separate plaintiffs in the next 4-5 months.

[2] In fact, this Court lacks jurisdiction to set a trial schedule for five of the seven cases because they were not filed in the Northern District of Illinois. *See In re: Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 2004 WL 315148, at *4 n.4 (S.D. Ind. 2004) (noting that the schedules for matters beyond the scope of MDL consolidation are set by the transferor court).

will not **know** what discovery would be duplicative until fact discovery in the MDL is complete. Intensive deposition practice in the MDL has begun only recently, with dozens of depositions still to come. How could Direct Action Plaintiffs know in January 2018 whether they need discovery of Navistar, Inc. employee "X" if employee "X" is going to be deposed by Plaintiffs in the MDL in February 2018? Obviously, they cannot know, but they perceive inefficiency to be their friend when it comes to a seven on one fight. Inefficiency, however, runs directly contrary to the purposes of the MDL process. *See infra* at 5-6.

And what justifications do Direct Action Plaintiffs offer for undermining the purposes of the MDL and prejudicing Defendants so severely? Not much. They say they are unique, but as discussed below, that really is not true. All 27 non-class plaintiffs in the MDL presumably prefer "direct action" to the (admittedly low) possibility of class status down the road; otherwise, they would not have filed their own lawsuits.[3] Two of the Direct Action Plaintiffs own more trucks than any Named Plaintiff, but other Direct Action Plaintiffs own only one truck. Two of the Direct Action Plaintiffs dealt directly with Navistar Inc. (unusual, not unique), but the other five

---

[3] To be sure, the proliferation of individual suits outside and before this Court speaks directly to the superiority requirement of Fed. R. Civ. P. 23. *See Amchem v. Windsor*, 521 U.S. 591, 617 (1997); *see also In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 283 F.R.D. 427, 438 (N.D. Ind. 2008) (noting that class actions "have been found superior when potential damages might be too insignificant to provide class members with incentive to pursue a claim individually," which is not the case at bar). Members of the proposed classes who filed separate cases prefer to control their own claims with counsel of their own choosing. That the Plaintiffs in the MDL will have difficulty in obtaining and maintaining class certification, however, is no excuse for duplicative and inefficient discovery processes. *See Diaz v. Ameriquest Mortg.*, 2014 WL 26265, at *2 (N.D. Ill. Jan. 2, 2014) (denying request for remand as prejudicial to defendant because "coordinated discovery remains outstanding"); Dec. 17, 2014 Transfer Order (Dkt. #1) at 2 ("Centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings (particularly as to class certification), and conserve the resources of the parties, their counsel, and the judiciary."). Indeed, MDL actions often include underlying individual suits and not class actions. *See*, *e.g.*, *In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, 890 F. Supp. 2d 896, 899-900 (N.D. Ill. 2012) (proceeding with an MDL of over 500 individual actions with no reference to class actions).

did not. The Motion offers no explanation common to the seven Direct Action Plaintiffs beyond their sudden desire to move quicker than the other 24 individual cases in the MDL.

Therefore, Defendants respectfully ask this Court to deny the Motion, or in the alternative, deny the Motion without prejudice and revisit alternative schedules for the Direct Action Plaintiffs in the context of the existing schedule for the MDL.

## II. BACKGROUND

On December 17, 2014, the Judicial Panel on Multidistrict Litigation ("JPML") transferred 14 federal cases from across the country to this Court for the purpose of administrative convenience and ensuring that pretrial proceedings were as efficient as possible. Dec. 17, 2014 Transfer Order (Dkt. #1) at 3-4. An additional 41 cases have been moved into the MDL, either by the JPML or by the Executive Committee of this District pursuant to L.R. 40.4. On May 11, 2015, lead and liaison MDL counsel filed the First Master Consolidated Class Action Complaint against Defendants. *See* Pls. First Master Consolidated Compl. (Dkt. #65). Since then, the parties have engaged in multiple rounds of written discovery, with depositions recently beginning in earnest. Fact discovery is scheduled to close on March 13, 2018, and expert discovery is scheduled to close on August 30, 2018. Agreed Order of 10/05/2017 (Dkt. #301) at 1 (ending depositions of Plaintiffs' class rebuttal experts on August 30, 2018).

Interim lead and liaison counsel approved by this Court are taking that fact discovery on behalf of **all** the plaintiffs in the MDL. *See* March 5, 2015 Order (Dkt. #27); Plaintiffs' Motion for Appointment of Interim Lead Counsel and Liaison Counsel (Dkt. #8); Par 4 Transport Plaintiffs' Response in Support of Motion for Appointment of Interim Class Counsel and Liaison Counsel (Dkt. #16). Part of this Court's directive was for "[i]nterim co-lead counsel [to] provide general supervision of the activities of **all plaintiffs' counsel in the litigation**." March 5, 2015 Order (Dkt. #27 at 3) (emphasis added). Such supervision included coordination and "discovery

on behalf of the plaintiffs ... including preparing joint interrogatories and requests for production of documents, and deposing witnesses." *Id.* (Although Direct Action Plaintiffs inexplicably declare that they are prohibited from coordinating with the other plaintiffs, Mot. (Dkt. #331) at 7, and only now are trying to obtain documents from liaison counsel, Mot. (Dkt. #331) at 8, this can only be because they never bothered to ask before.)

The only thing the seven Direct Action Plaintiffs have in common is that their counsel decided to join the Motion. Some of them joined the MDL over two years ago. *See* Mot. (Dkt. #331) at 3-4 (noting that All Freight Systems, Inc. was transferred in February 2015, Floyd Blinsky Trucking, Inc. was transferred in July 2015, Great Plains Trucking, Inc. was transferred in February 2015, and Duffy's Waste was transferred in January 2016.). Other Direct Action Plaintiffs were moved to the MDL only a few months ago (and therefore have not been materially delayed by the pace of the MDL at all). *See* Mot. (Dkt. #331) at 2-3 (noting that Adrian Trucking was transferred in February 2017, Cardinal Logistics was transferred in September 2017, and Ferguson Enterprises was transferred in April 2017).

Some of the Direct Action Plaintiffs undertook substantial, separate discovery prior to being transferred into the MDL. For example, Floyd Blinsky already has "completed substantial discovery, including substantial written discovery and oral depositions," and Adrian Trucking already has "completed substantial discovery, including multiple rounds of written discovery as well as oral depositions[.]" Mot. (Dkt. #331) at 3-4. Other Direct Action Plaintiffs have undertaken non-MDL discovery. For example, Ferguson and Cardinal both **chose** to file here in the Northern District of Illinois and were moved to the MDL soon after filing.

Some of the Direct Action Plaintiffs purchased and/or leased a lot of trucks (relatively speaking). For example, Ferguson and Cardinal each allege ownership of hundreds of Navistar

Inc. trucks. Mot. (Dkt. #331) at 2. Other Direct Action Plaintiffs purchased and/or leased relatively few trucks. For example, Adrian Trucking alleges only 11 trucks, and Duffy's Waste and Recycling alleges only one. Mot. (Dkt. #331) at 3-4. Some of those purchases by the Direct Action Plaintiffs allegedly involved direct negotiation with Navistar Inc. Mot. (Dkt. #331) at 6. But all of the others purchased and/or leased their trucks from particular dealers or other parties independent of Navistar Inc.

## III. LEGAL STANDARD

This Court, of course, has the discretion to create a separate schedule, but the Direct Action Plaintiffs do not have a right to a separate schedule (much less the schedule they propose). In exercising its discretion, Defendants respectfully request that the Court consider the purposes of the MDL, which are to promote just and efficient pretrial proceedings. *See* 28 U.S.C. § 1407(a); *Diaz v. Ameriquest Mortgage Co.*, 2014 WL 26265, at *1-2 (N.D. Ill. 2014) (holding that cases should remain in an MDL so long as "continued consolidation would eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." (internal quotation marks and citation omitted)). The MDL was not established only to benefit the Plaintiffs; Defendants are entitled to the MDL's benefits as well. *See*, *e.g.*, *In re Aqua Dots Prods. Liab. Litig.*, 2011 WL 3325783, at *2 (N.D. Ill. Aug. 2, 2011) ("Defendants, too, deserve the benefits of coordinated and consolidated pre-trial discovery.").

Even if the Direct Action Plaintiffs failed to take full advantage, coordination between all counsel and lead and liaison counsel in the MDL is precisely one of the purposes of an MDL. *See, e.g.*, *Meeder v. Superior Tube Co.*, 72 F.R.D. 633, 636-37 (W.D. Pa. 1976) (noting that in an MDL "to avoid duplication [of discovery] and unnecessary inconvenience to the parties and witnesses there should be coordinated discovery. This can best be accomplished by the

designation of counsel to coordinate and act as liaison with other counsel and with the court."); *see also* 28 U.S.C. § 1407(a); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 124 Fed. Appx. 452, 457 (7th Cir. 2005) (noting that the creation of "a separate discovery schedule for [a subset of an MDL would] . . . defeat the purpose of MDL consolidation.").

## IV. ARGUMENT

The Direct Action Plaintiffs seek to impose an unfair discovery and trial schedule that forces (for no valid reason) Defendants to fast track the fact discovery of seven cases in the next five months simultaneously with discovery in the MDL. *See* Proposed Schedule. The proposed schedule then does the same for expert reports and expert depositions only instead of five months, Defendants have less than three. *Id.* Finally, Direct Action Plaintiffs request what is nearly impossible – that **seven trials** be scheduled **at about the same time**. *Id.*

There are at least three independent reasons why the Direct Action Plaintiffs' proposed discovery is not aligned with the purpose of the MDL: (1) regardless of the schedule they propose, Direct Action Plaintiffs have not made a case for being treated differently than the other 24 MDL plaintiffs; (2) the Direct Action Plaintiffs' proposal would frustrate the purposes of the MDL and be inefficient for all parties, including the court, *see Diaz v. Ameriquest Mortgage Co.*, 2014 WL 26265, at *1-2; and (3) the Direct Action Plaintiffs' Motion would be unfair and very prejudicial to Defendants.

### A. The Direct Action Plaintiffs Have Not Shown Why They Should Be Treated Differently Than Other MDL Plaintiffs

The Motion of the Direct Action Plaintiffs argues that the current scheduling order in the MDL is "ill-suited" to their cases because of "unique facts for which limited discovery – separate from that already completed in the MDL – is needed." Mot. (Dkt. #331) at 6. The Direct Action Plaintiffs' motives are clear – they want all of the benefits of the MDL and are now

seeking special treatment because it is convenient for them. Rather than establish for the Court, however, exactly what it is that makes each of the seven Direct Action Plaintiffs' factual circumstances so unique as to call for separate scheduling, the Motion instead makes conclusory assertions regarding the "uniqueness" of only **one** of the seven plaintiffs' circumstances, which are actually not meaningfully unique. That is, to support its claims of uniqueness for **seven** plaintiffs, the Motion points to only **one** Plaintiff – Ferguson. Mot. (Dkt. #331) at 6. According to the Motion, the "unique facts" specific to Ferguson are as follows:

- Ferguson is "a large company with several hundred [Navistar, Inc.] trucks," unlike "many of the smaller entities involved in the class actions;" and
- Ferguson "conducted negotiations for the purchase of the [Navistar, Inc.] engines and warranty/repair discussions directly with [Navistar, Inc.]."

Mot. (Dkt. #331) at 6. That's it.

While Ferguson may have purchased a larger number of trucks than Named Plaintiffs, there is nothing particularly "unique" about the fact that Ferguson negotiated with Navistar, Inc. For example, small quantities of used trucks can be purchased directly from Navistar, Inc.'s Used Truck Centers. And all of the other 76 Plaintiffs in the MDL (whether Named Plaintiffs in the class actions or not) negotiated directly with either Navistar, Inc. or a particular authorized dealership or a third-party seller. **Every** Plaintiff has these "unique" facts.[4]

For the remaining six Direct Action Plaintiffs, the Motion does not show any "unique facts," much less facts sufficient to justify expediting the Direct Action Plaintiffs' cases at the

---

[4] Once pretrial discovery in the MDL is complete, each of these Plaintiffs will be sent back to the transferee court, and can at that time engage in limited party-specific discovery. *See In re Mirena IUD Prod. Liab. Litig.*, 938 F. Supp. 2d 1355, 1357 (U.S. Jud. Pan. Mult. Lit. 2013) ("Once discovery and other pretrial proceedings related to the common issues have been completed, the transferee judge may suggest Section 1407 remand of actions to transferor courts for more individual discovery and trial, if necessary.").

expense of the MDL's efficiency. *See supra* at 7-8. Instead, the Motion relies on a series of conclusory or speculative assertions that the current MDL schedule will somehow "pose a lengthy and unnecessary delay in the resolution" of the Direct Action Plaintiffs' claims and that "the parties cannot coordinate with other plaintiffs . . . and documents already produced [to lead counsel in the MDL] may not include documents and/or information specific" to the Direct Action Plaintiffs. Mot. (Dkt. #331) at 6-7. Respectfully, the Court should not undermine the MDL process and prejudice Defendants based on conclusory speculation. *See supra* at 10-14.

### B. Direct Action Plaintiffs' Proposal Would Frustrate The Purpose Of The MDL And Lead To Inefficiencies For All Parties, Including the Court

The Direct Action Plaintiffs claim they need separate discovery and trial schedules, because they "cannot coordinate with other plaintiffs on [discovery] issues[.]" Mot. (Dkt. #331) at 6-7. Not only can they coordinate, however, they should be coordinating with lead and liaison MDL counsel – that is the way the Court designed the MDL to work (and another reason the Direct Action Plaintiffs should not get all the benefits of the MDL and still get all the other discovery they want). In fact, this Court, in appointing lead and liaison MDL counsel in the spring of 2015 (Dkt. #27), specifically directed that all Plaintiffs' counsel in the MDL coordinate with each other to ensure discovery progressed in an efficient manner, as that is one of the purposes of an MDL. *See* disc. *supra* at 5-6.

Several of the Direct Action Plaintiffs have literally had years to "coordinate" with lead and liaison MDL counsel, review any existing discovery, and determine whether any Plaintiff-specific discovery is even needed, but they have failed to do so. *See supra* at 10. Yet, now they seek to reap those very benefits and simultaneously cry foul that those benefits are not enough – essentially that they get any discovery they want regardless of the MDL. It is not credible for

Plaintiffs to suggest they cannot coordinate with other parties in the MDL with regard to discovery – they should already be coordinating.

Further, a pillar of the MDL is the need to eliminate duplicative discovery. *See* disc. *supra* at 5-6. The Motion of the Direct Action Plaintiffs repeatedly states they do not intend to duplicate discovery that will be concurrently taken in the MDL. *See* Mot. at 7, 8. The only true way to ensure there will be no duplicative discovery, however, is for the Direct Action Plaintiffs to work with lead and liaison MDL counsel and determine what additional discovery is needed (in other words let the MDL process play out as designed).

Defendants assumed Direct Action Plaintiffs, and all MDL plaintiffs, were working cooperatively together as this Court directed. It is neither appropriate nor fair for Defendants to bear the burden of Direct Action Plaintiffs' onerous proposed schedule when they have failed to even attempt to coordinate with lead and liaison MDL counsel. *See* Mot. at 5, 7 ("the parties **will** coordinate with the other MDL cases whenever possible") (emphasis added).

Furthermore, two of the Direct Action Plaintiffs engaged in case-specific discovery prior to their transfer to the MDL and are in very different positions than the others. Floyd Blinsky engaged in active discovery practice for over a year before it was transferred to the MDL. *See* Mot. (Dkt. #331) at 3; *supra* at 4-5. Similarly, Adrian Trucking was engaged in discovery with Defendants for over a year, and as the Motion notes, discovery included "multiple rounds of written discovery as well as oral depositions, including [of] Plaintiff's owner, truck drivers, mechanics, and corporate representative." Mot. (Dkt. #331) at 3-4.

Finally, not a single one of the seven Direct Action Plaintiffs objected to transfer into the MDL, which would have been the appropriate way to object to inclusion in the MDL. *See* Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation Rule 6.2 (e) ("Any

party or counsel in one or more potential tag-along actions . . . may file a response to a pending motion to transfer.”). For the Ferguson and Cardinal Plaintiffs who filed in the Northern District of Illinois, and thus were moved to the MDL via Local Rule 40.4 governing the transfer of related cases, neither objected. *See* Mot. (Dkt. #331) at 2.

**C. The Direct Action Plaintiffs' Proposed Order Would Be Unfair And Prejudicial To Defendants**

Direct Action Plaintiffs' Motion claims to seek “additional, limited discovery related to [Plaintiffs'] specific claims;” but what they really seek is all of the communications regarding the negotiation, service, repair and maintenance for seven separate cases (involving 1,100+ trucks) on an expedited schedule simultaneously with the remaining discovery in the MDL (including over 60 depositions). Mot. (Dkt. #331) at 5; Plaintiffs' Proposed Schedule, Ex. A. to Mot. Direct Action Plaintiffs' proposal is unfair because Defendants have limited in-house resources, and discovery for 1,100 trucks is broad. It is prejudicial because Defendants have much to do in the MDL, and preparing for seven trials simultaneously would be difficult if not impossible.

First, Navistar, Inc. has a limited number of employees who are able to work on the MDL and Direct Action Plaintiffs matters. Currently, Navistar, Inc.'s legal department has limited personnel available to work on the MDL itself and, if the proposed schedule were adopted, the same employees would have to take on the additional work for the Direct Action Plaintiffs' cases. *See* McKinney Decl., Ex. A at ¶ 11. And, Navistar, Inc.'s legal department would need to coordinate with numerous employees throughout the organization from departments such as I.T., sales, and the department that handles warranty claims. *See id.* at ¶ 12. To comply with the discovery requests, Navistar, Inc.'s in-house legal team would likely expend several hundred hours of work **in addition** to the effort needed in the MDL, and this does not include the hours other departments would expend complying with the requests. *See id.*

Moreover, the discovery contemplated in the Motion is not "limited" (as the Motion suggests) and would be substantial, burdensome and costly. *See id.* at ¶¶ 5-12. By way of example, searching for correspondence regarding the purchase, repair and warranty histories of **all the Named Plaintiffs** in the Class Action Case, which involves a total of approximately 240 individual trucks, resulted in over 66,000 documents that needed to be reviewed. *See id.* at ¶ 8. And, the Direct Action Plaintiffs have nearly five times as many trucks as all of the Named Plaintiffs in the class actions combined. Thus, it is reasonable to believe that the Direct Action Plaintiffs "limited discovery" will result in many tens of thousands more documents to review.

Second, even more concerning is the prejudice Direct Action Plaintiffs' proposed schedule and "limited discovery" would impose on Defendants. Currently, Defendants and this Court are busy completing fact discovery in the MDL by **March 13, 2018**, and the Direct Action Plaintiffs contemplate Defendants have to complete discovery for **seven additional cases** six weeks later on April 30, 2018. *See* Agreed Order (Dkt. #301) at 1; Ex. A to Mot. at ¶ 2.

The Direct Action Plaintiffs are essentially asking Defendants—and this Court—to rush through the next four months to complete discovery in the class actions and then within six weeks complete individual discovery in **seven additional cases simultaneously** (discovery that not only includes what Direct Action Plaintiffs need from Defendants, but what Defendants need from all seven Direct Action Plaintiffs). That level of simultaneous discovery probably cannot be completed in the short time frame allowed, but even if it could, it certainly could not be done efficiently or without duplication of discovery. If the seven Direct Action Plaintiffs cases were not in the MDL, it would typically take at least a year (likely two) to complete the amount of "limited" discovery the Direct Action Plaintiffs are requesting in the next **five months**.

And the burden of the proposed schedule is not limited to Defendants. Defendants will likely use the same experts in both the MDL and each of the underlying actions in the MDL. That means that Defendants' experts would have to prepare **at least** eight sets of reports (one for the MDL and **at least**[5] one for each of the seven Direct Action Plaintiffs) and sit for **eight depositions** in the span of approximately 10 weeks. It would be burdensome, if not impossible, to expect Defendants' experts who have separate careers and responsibilities to spend all of their time meeting the demands of this case. For these reasons, Plaintiffs' request is not appropriate and would not lead to the administrative convenience and efficiency of pretrial proceedings that are the purpose of the MDL.

## V. CONCLUSION

For all the reasons stated above, Defendants respectfully request that the Court deny Plaintiffs' Motion or, in the alternative, deny the Motion without prejudice and revisit alternative schedules for the Direct Action Plaintiffs in the context of the existing schedule for the MDL.

Dated: November 21, 2017

Respectfully submitted,

/s/ Cary R. Perlman
One of the Attorneys for Defendants Navistar, Inc. and Navistar International Corporation

[5] Direct Action Plaintiff are represented by different law firms. They likely will not use the same expert or limit themselves to one expert. Thus, there will be more than eight expert reports and expert depositions.

Cary R. Perlman
cary.perlman@lw.com
Mark S. Mester
mark.mester@lw.com
Robin M. Hulshizer
robin.hulshizer@lw.com
Kathleen P. Lally
kathleen.lally@lw.com
Christopher R. Dyess
chris.dyess@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

## CERTIFICATE OF SERVICE

I, Cary R. Perlman, hereby certify that on November 21, 2017, a copy of the foregoing document was filed electronically using the CM/ECF System. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Cary R. Perlman
Cary R. Perlman