# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation | ) ) ) ) ) ) ) ) ) | Case No. 1:14-cv-10318<br><br>This filing applies to:<br>All Class Cases<br><br>Judge Joan B. Gottschall |

## DECLARATION OF JASON L. LICHTMAN

I, Jason L. Lichtman, am one of the attorneys representing Plaintiffs in the above-captioned action. I am an attorney in good standing before the State of Illinois and this Court. I submit this declaration in support of Plaintiffs' Motion to Compel Production of Documents and Answers to Interrogatories.

**Plaintiffs' Class Engines**

1.  Navistar has served interrogatories on each Plaintiff requiring each Plaintiff to identify each truck in that Plaintiff's current or former possession containing a Class Engine.

2.  The following chart summarizes Plaintiffs' responses to those interrogatories:

| PLAINTIFF(S) | NUMBER OF TRUCKS REPORTED |
|---|---|
| Alka Trucking & A-Rapid Logistics | 1 |
| Binder Trucking, Inc. | 5 |
| Butler, Leonard | 1 |
| Caballero, Victor | 1 |
| Carmichael Leasing Co., Inc. | 19 |
| Constantine, Robert | 1 |
| C&T Transport | 1 |
| Edwards, Lance | 1 |
| Ferraro Foods Inc. | 20 |
| Fike Logistics, Inc. | 5 |
| Gettysburg Auto Transport | 1 |
| G&G Specialized Carriers | 1 |

1492028.3

| | |
|---|---|
| Grieser, Robert | 1 |
| Hamilton, Steven | 1 |
| Jackson, Sr., Michael | 1 |
| Jenkins Unlimited, Inc. | 4 |
| Joadnas Operations, Inc. | 2 |
| Killer B Trucking LLC | 4 |
| Lakeside Leasing, Inc. & Storey Trucking | 5 |
| Lord AG Transportation | 1 |
| Penninsular Transfer, Inc. | 1 |
| Phifer Trucking Inc. | 1 |
| Quick, Randy | 1 |
| Ronald L. Anderson | 1 |
| The Cross Express | 1 |
| Vera Transport LLC | 2 |
| Wright Transportation | 104 |

   3. Several Plaintiffs have sold their trucks or had them repossessed, including Binder Trucking, Leonard Butler, Lance Edwards, Gettysburg Auto Transport, G&G Specialized Carriers, Robert Grieser, Lakeside/Storey, Phifer Trucking, Vera Trucking, and Wright Transportation. Of particular relevance, Wright Transportation now owns only one Class Engine.

**The EPA Running Change Submissions**

   4. On July 20, 2017, I approved service of Plaintiffs' Second Set of Requests For Production. Those Requests are attached to the Motion as Exhibit C.

   5. Request for Production No. 17 sought

> All Documents Relating to Navistar's submissions to the EPA for the engines, including Parts 1, 2, and running change submissions under 40 CFR Part 86 . . . .

   6. On September 5, 2017, Navistar, Inc. served its Objections and Responses, attached to the Motion as Exhibit D.

   7. Navistar agreed to search for and produce "the engine certification of compliance application submissions submitted to the EPA for the Class Engines." In other words, Navistar agreed to produce its initial emissions compliance certifications, but not the "running change

submissions" required by the EPA any time Navistar made a design change to the emissions components of the Engines.

8. On September 29, 2017, I, along with my colleagues Jason Dennett, Steve Weinmann, Amy Keller, John Tangren, and Schuyler Geller met and conferred telephonically with Robin Hulshizer, Chris Dyess, and Garrett Long. The transcript of that meet-and-confer is attached to the Motion as Exhibit X. Among other topics, we discussed Request 17 for EPA documents. Navistar did not change its positions on Request 17.

9. Specifically, Navistar reiterated its position that the running change submissions were cumulative of other documents produced, and that production would be too burdensome. Ex. X at 42-47. On burden, Ms. Hulshizer acknowledged that "I don't know the answer exactly where" the EPA running change submissions are stored, but that "they're not in one easy location." *Id.* at 44.

10. On October 27, 2017, Mr. Dennett sent Mr. Dyess and Ms. Hulshizer a letter following up on several requests, including Request 17. That letter is attached to the Motion as Exhibit Y. He explained that running change submissions follow a specific regulatory format and require a narrative explanation of each change and the reason for it, therefore the request would not be cumulative of other documents that Navistar produced related to specific component changes.

11. On November 30, 2017, Mr. Dyess responded by letter. That letter is attached to the Motion as Exhibit AA. In that letter, Mr. Dyess indicated that Navistar stood on its objections to producing the running change submissions.

12. On January 5, 2018, after the Court held a status hearing, the parties met and conferred in the courtroom. During that discussion, counsel for Navistar stated that they had not

3

undertaken (and would not undertake) any effort to learn where the running change submissions were located.

**Plaintiffs' Interrogatories**

13. September 29, 2017, I served on Defendants Plaintiffs' First Set of Interrogatories. Those Interrogatories are attached to the Motion as Exhibit E.

14. Interrogatory No. 2 requested that Navistar:

> Identify any changes to the EGR Only System that You contend impacted performance or reliability of the engines as it relates to the alleged EGR defect, the date of any such change, and explain why each such change impacted performance or reliability of the engines as it relates to the alleged EGR defect.

15. Interrogatory No. 3 requested that Navistar:

> Identify any factors, other than the design of the EGR Only System itself, that You contend her responsible for failures within the EGR Only System.

16. Navistar responded with a number of objections. Navistar, Inc.'s Objections and Responses to Plaintiffs' First Set of Interrogatories are attached to the Motion as Exhibit F (filed under seal because Navistar, Inc. designated its interrogatory responses "attorneys' eyes only" under the protective order).

17. Navistar stated that it could not understand many of the concepts described in the interrogatories. Navistar objected that the interrogatories were premature contention interrogatories. As to design changes, Navistar suggested an analysis of the engines in Plaintiffs' trucks would reveal the requested information. As to other factors, Navistar stated the number of factors affecting reliability was too numerous to quantify or identify. Finally, Navistar stated that its investigation was ongoing and it would supplement the responses as necessary.

18. Plaintiffs also asked Navistar to identify *all* changes to the Class Engines. Navistar refused. Those interrogatories (nos. 1 and 4) are not at issue in this Motion.

4

1492028.3

19. On November 15, 2017, Mr. Dennett wrote a letter to Ms. Hulshizer and Mr. Dyess challenging Navistar's refusal to answer Plaintiffs' interrogatories. A copy of that letter is attached to the motion as Exhibit Z. Specifically, Mr. Dennett explained to Navistar that Plaintiffs' understanding of the relevant changes arose from Navistar's statements in its opposition to Plaintiffs' motion for a bellwether procedure.

20. On December 1, 2017, Mr. Dyess responded with a letter, which is attached to the Motion as Exhibit BB. In that letter, Mr. Dyess reiterated the arguments Navistar made in its Answer and its opposition to the bellwether motion, namely that Navistar relied on an unspecified number of design changes and other factors.

21. On December 4, 2017, Mr. Dennett, along with Ms. Keller, met and conferred telephonically with Mr. Dyess and Mr. Long. The transcript of that meet-and-confer is attached to the Motion as Exhibit CC. Navistar did not change its positions on any of the four interrogatories.

22. On December 11, 2017, Ms. Keller wrote a letter to Mr. Dyess following up on the meet-and-confer. A copy of that letter is attached to the Motion as Exhibit DD. Ms. Keller reiterated that Plaintiffs were seeking the factual basis for the assertions Navistar made in its Answer and in its opposition to the bellwether motion, and that Navistar's refusal to answer the interrogatories was inappropriate.

23. On December 17, 2017, Mr. Dyess responded with a letter, which is attached to the Motion as Exhibit FF. In that letter, Mr. Dyess reiterated Navistar's position that Plaintiffs should look to documents Navistar had produced to identify changes to the Class Engines. Mr. Dyess did not change Navistar's position on any of the four interrogatories.

24. The parties meet-and-confer efforts on Plaintiffs' interrogatories generally discussed all four interrogatories, particularly Navistar's objections to Interrogatories nos. 1 and 4 on the basis that Plaintiffs should look to documents in Navistar's productions for the information sought. Nevertheless, Plaintiffs clearly articulated that their requests focused on the factual bases for the assertions Navistar made in its Answer and in its bellwether motions. And Navistar made it clear that it stood on its objections.

**B718 Documents**

25. Plaintiffs' Second Set of Requests for Production (Exhibit C) sought, among other documents, (1) production of the information in Navistar's warranty database; (2) documents sufficient to compare the number of days of downtime in other Navistar engines with the Class Engines; (3) Documents summarizing or compiling engine dynamometer test results for other Navistar engines and the Class Engines; and (4) sales data about both Class Engines and other Navistar engines.

26. Sales data:

    a. Request for Production No. 1 asked Navistar to produce "Documents sufficient to Identify" each truck sold or leased as new between 2008 and 2016, including details such as the warranty coverage purchased. Ex. C at 9-10.

    b. Request for Production No. 2 asked Navistar to produce "Documents sufficient to Identify" standard vehicle characteristics that affect price, current warranty status, mileage, and as well as total aggregate sales for each model. *Id*. at 10.

27. Warranty data:

    a. Request for Production No. 3 asked Navistar to produce, for each truck, "Documents sufficient to show all maintenance performed under warranty." *Id.* at 10-11.

1492028.3

28. Reliability data:

    a. Request for Production No. 4 asked Navistar to produce "Documents comparing the rate of failure of the EGR Only System, Engines equipped with the EGR Only System, or Proposed Class Trucks to the rate of failure for any truck that is not a Proposed Class Truck or any engine that is not used in Proposed Class Trucks." *Id.* at 11.

    b. Request for Production No. 5 asked Navistar to produce "Documents comparing days of downtime for the EGR Only System, Engines equipped with the EGR Only System, or Proposed Class Trucks to the days of downtime for any truck that is not a Proposed Class Truck or any engine that is not used in Proposed Class Trucks." *Id.* at 11-12.

29. Test results:

    a. Request for Production No. 22 asked Navistar to produce "Documents summarizing or compiling engine dynamometer test results for the Engines." *Id.* at 17.

30. Navistar refused to provide any documents related to vehicle or engines outside the putative class. *See* Ex. D (Navistar, Inc.'s Response and Objections) at 7-18, 37-38 (objecting, for example, to producing testing results for "MaxxForce [] engines utilizing urea-based aftertreatment").

31. On the September 29, 2017 meet-and-confer, the parties discussed the above-described requests for production. Ex. X at 4-12. Ms. Hulshizer indicated that Navistar stood on its objections, but that it would revisit its positions after Judge Mason ruled on then-pending motions regarding two subpoenas issued to third-party manufacturers Daimler and Volvo. *Id.* Plaintiffs agreed to table the discussion on condition that "it's without prejudice to our ability to raise these issues after the ruling on the Daimler and Volvo motions." *Id.* at 11. Ms. Hulshizer

7

agreed to "table" the issues "without prejudice to you all." *Id.* at 12. The motions related to Daimler and Volvo were resolved on December 5, 2017. *See* Dkt. No. 354.

  32. On December 12, 2017, in an effort at compromise, I wrote a letter to Ms. Hulshizer and Mr. Dyess narrowing the requests in two significant ways. That letter is attached to the Motion as Exhibit EE. First, I agreed to narrow requests 1-4 to sales, warranty, and reliability documents or data relating to the B718 engine. *Id.* at 1. Second, I agreed to narrow requests 4 and 5 (reliability data) to databases, spreadsheets, and presentations. *Id.*

  33. My letter pointed out that the B718 engine is the same as Class Engines, except that the B718 engines "do not contain the specific, alleged defect at issue in this litigation." The two engines are therefore an "apples to apples" comparison.

  34. On December 21, 2017, I, along with Mr. Dennett, met and conferred telephonically with Mr. Dyess and Mr. Garrett Long. The transcript of that meet-and-confer is attached to the Motion as Exhibit GG.

  35. During that meet-and-confer, Plaintiffs emphasized the need to compare the Class Engines to the B718, discussing in particular the "EGR maps" and "soot maps", i.e., the dynamometer testing results requested by RFP No. 22. *Id.* at 6.

  36. Mr. Long reiterated Navistar's objection to producing B718 information, but stated that he would let Plaintiffs know Navistar's final position the following week. *Id.* at 3-6.

  37. On December 27, 2017, Mr. Long confirmed, by email, that Navistar would not produce information related to the B718. A copy of that email is attached to the Motion as Exhibit HH.

*   *   *

38. After good faith attempts to resolve differences, Plaintiffs and Defendants are unable to resolve the issues raised in this Motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: January 15, 2018 in New York, New York.

Jason L. Lichtman