**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation** | ) ) ) ) ) ) ) ) | **Master Case No. 1:14-cv-10318**<br><br>This filing applies to<br>All Class Cases<br><br>**Judge Joan B. Gottschall** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................1

II.     BACKGROUND .............................................................................2

        A.      Litigation History.................................................................2

        B.      Settlement Discussions .......................................................4

III.    THE SETTLEMENT'S MATERIAL TERMS ......................................4

        A.      The Settlement offers significant benefits to the Class.............5

                1.      The Prove-Up Option: prove damages up to $15,000 ..................6

                2.      The Cash Option: $2,500 cash over the life of the truck ...............7

                3.      The Rebate Option: up to $10,000 off a new Navistar truck..........8

                4.      Compensation for leased Class Vehicles. ........................................9

                        a.      Leases from Navistar. ..........................................................9

        B.      The Settlement includes robust notice and a claims process. ....................9

IV.     LEGAL STANDARD.........................................................................11

V.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................11

        A.      The Class Representatives and Class Counsel are adequate and
                have served the best interests of the Class over the past four years. .........12

        B.      The Parties negotiated the Settlement at arm's length...............................13

        C.      The Settlement provides excellent relief.....................................................13

                1.      The Settlement is superior to the costs, risks, and delay of
                        trial and appeal................................................................................14

                2.      The Settlement provides for state-of-the-art claims
                        processing and relief to the class. ....................................................17

                3.      Attorneys' fees are fair.....................................................................18

                4.      There are no agreements between the parties separate from
                        the Settlement...................................................................................19

## TABLE OF CONTENTS
### (continued)

<u>Page</u>

D. The Settlement treats Class Members equitably ........................................19

VI. THE PROPOSED SETTLEMENT CLASS LIKELY WILL BE CERTIFIED ........................................................................................................20

A. The class is sufficiently numerous. ..........................................................20

B. There is at least one common question likely to drive the resolution of this litigation. ........................................................................................21

C. The proposed Class representatives' claims are typical. ..........................23

D. The Class representatives and Interim Co-Lead Counsel are adequate. ..................................................................................................23

E. Common legal and factual issues predominate over individual issues. .....................................................................................................24

F. Class resolution is superior to alternatives.................................................25

VII. THE PROPOSED NOTICE SATISFIES RULE 23(E)(1) AND DUE PROCESS ........................................................................................................26

VIII. CONCLUSION.................................................................................................27

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................ 20

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ............................................................................................ 21

*Barnes v. Air Line Pilots Ass'n, Int'l*,
310 F.R.D. 551 (N.D. Ill. 2015) ........................................................................ 26

*Beley v. City of Chicago*,
No. 12-9714, 2015 WL 8153377 (N.D. Ill. Dec. 7, 2015) ................................ 21

*BMW of N. Am. v. Gore*,
517 U.S. 559 (1996) ............................................................................................ 15

*Butler v. Sears, Roebuck & Co.*,
702 F.3d 359 (7th Cir. 2012) .............................................................................. 24

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) .................................................................... 22, 24, 25

*Carnegie v. Household Int'l., Inc.*,
376 F.3d 656 (7th Cir. 2004) .............................................................................. 25

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006) .............................................................................. 22

*Dutch Maid Logistics, Inc. v. Navistar Inc.*,
No. 15CV0129 (Ohio Com.Pl.) ..................................................................... 15, 16

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ............................................................................................ 27

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein*,
69 P.3d 965 (Cal. 2003) ...................................................................................... 15

*Flynn v. FCA US LLC*,
327 F.R.D. 206 (S.D. Ill. 2018) .......................................................................... 24

*Hale v. State Farm Mut. Auto. Ins. Co.*,
No. 12-666, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ........................ 11, 13, 16

1730576.4

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) .......................................................................... 12

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011)................................................................... 27

*In re Checking Account Overdraft Litig.*,
    307 F.R.D. 656 (S.D. Fla. 2015) .......................................................................... 25

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    No. 05MD1720MKBJO, 2019 WL 359981 (E.D.N.Y. Jan. 28, 2019).................... 12

*In re Pharmaceutical Industry Average Wholesale Price Litigation*,
    252 F.R.D. 83 (D. Mass. 2008) ........................................................................... 24

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013)............................................................................... 25

*In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation*,
    MDL No. 2540 (D.N.J.) ...................................................................................... 17

*In re: Navistar MaxxForce Engines Mktg., Sales Practices & Prod. Liab. Litig.*,
    67 F. Supp. 3d 1382 (J.P.M.L. 2014) .................................................................... 3

*Kramer v. Am. Bank & Trust Co.*,
    No. 11-8758, 2017 WL 1196965 (N.D. Ill. Mar. 31, 2017) ................................... 23

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ..................................................................... 26, 27

*McManus v. Fleetwood Enters., Inc.*,
    320 F.3d 545 (5th Cir. 2003) .............................................................................. 22

*Mednick v. Precor, Inc.*,
    320 F.R.D. 140 (N.D. Ill. 2017) ......................................................................... 23

*Milan Supply Chain Sols., Inc. v. Navistar, Inc.*,
    No. 14-285 (Tenn. Cir. Ct.) ................................................................................ 15

*Milan Supply Sols., Inc. v. Navistar, Inc.*,
    No. W2018-00084-COA-R3-CV (Tenn. Ct. App.) ................................................ 16

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ........................................................................ 27

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ........................................................ 26

*O'Connor v. Uber Techs., Inc.*,
  No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ................................ 12

*Reynolds v. Beneficial Nat. Bank*,
  288 F.3d 277 (7th Cir. 2002) ........................................................ 16

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ........................................................ 21

*Seiden v. Nicholson*,
  72 F.R.D. 201 (N.D. Ill. 1976) ...................................................... 14

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ............................................... 22, 24, 25

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ........................................................... 23

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ................................................................... 24

*Wal-Mart Stores, Inc.* v. *Dukes*,
  564 U.S. 338 (2011) ....................................................................... 21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ............................................... 22, 25

**RULES**

Fed. R. Civ. P. 23(a)(1) .................................................................... 20

Fed. R. Civ. P. 23(a)(2) .............................................................. 20, 22

Fed. R. Civ. P. 23(a)(3) .............................................................. 20, 23

Fed. R. Civ. P. 23(a)(4) .............................................................. 20, 23

Fed. R. Civ. P. 23(b)(3) ......................................................... 20, 24, 25

## TABLE OF AUTHORITIES
### (continued)

**Page**

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................... 26

Fed. R. Civ. P. 23(e)(1) .............................................................................. 26

Fed. R. Civ. P. 23(e)(1)(ii) ......................................................................... 20

Fed. R. Civ. P. 23(e)(2) ..................................................................... 11, 12, 13, 23

Fed. R. Civ. P. 23(e)(2) advisory committee note ....................................... 11

Fed. R. Civ. P. 23(e)(2)(C)(i) ...................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(ii) ..................................................................... 17

Fed. R. Civ. P. 23(e)(2)(C)(iii) .................................................................... 18

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................... 19

Rule 23(e)(2)(C)(iii) .................................................................................... 19

## OTHER AUTHORITIES

https://www.enginesettlement.com/Home/FAQ#faq7 .................................. 17

https://www.enginesettlement.com/Home/FAQ#faq9 .................................. 17

Tyson Fisher, "Navistar loses $1.3M in second MaxxForce engine lawsuit," *Land Line* (Mar. 7, 2019), http://www.landlinemag.com/story.aspx?storyid=73866 ............................................. 16

I.    **INTRODUCTION**

This multidistrict litigation involving certain allegedly defective truck engines manufactured and sold by Navistar, Inc. (collectively, with Co-Defendant Navistar International Corporation, "Navistar") has been hotly litigated for more than four years. The parties exchanged and reviewed more than 2.5 million documents, took and defended over 60 depositions, litigated multiple discovery motions, and retained and worked extensively with many consulting and testifying experts on both liability and damages issues. The parties reached agreement on a proposed nationwide class action settlement ("Settlement") on the literal eve of class certification briefing, after Plaintiffs' finalized their class certification motion and supporting expert reports. *See* Ex. A (Settlement Agreement).[1]

The Settlement now before this Court is the result of hard fought and adversarial litigation and negotiations, informed by years of legal experience and reached with the substantial aid of an experienced and skilled mediator over the course of many months. This Settlement provides significant benefits to the proposed Class, including:

- Payment by Navistar of $135 million in non-reversionary funds.

- Each Class Member has the option to choose from three different forms of relief for each truck the Class Member owned or leased:

  o Up to $15,000 in reimbursements for documented out-of-pocket expenses for each owner and lessee of each truck.

  o A cash payment of $2,500 per truck without documentation of any damages, apportioned among different owners and lessees of that truck over the class period.

  o A $10,000 rebate toward the purchase of a new Navistar truck, apportioned among different owners and lessees of that truck over the class period.

---

[1] All capitalized terms have the meaning as defined in the Settlement Agreement.

- State-of-the-art notice, by an independent, Court-appointed notice provider, jointly overseen by the parties, and paid for out of the Cash Fund.

- State-of-the-art claims administration by an independent, Court-appointed administrator, jointly overseen by the parties, and paid for out of the Cash Fund.

- Plaintiffs' attorneys' fees and reimbursement of costs paid from the cash fund established by Navistar.

In exchange, absent class members release only the economic-loss claims at issue in this class litigation. They do not release claims for personal injury or damage to property other than to the truck itself or its cargo.

Interim Co-Lead and Liaison Counsel submit that the proposed Settlement represents an outstanding result for the Class, one that compares favorably to other similar settlements and even with jury verdicts that non-class plaintiffs obtained in individual litigation (not to mention the cases where Navistar prevailed). Plaintiffs seek to have the Court approve the settlement under Rule 23(e), and take the first step in that process by disseminating notice to the Class consistent with Rule 23 and Due Process. Accordingly, Plaintiffs ask the Court to: (1) find that it "will likely" be able to approve the Settlement at the final approval stage; (2) find that it "will likely" be able to certify the Settlement Class at the final approval stage; (3) approve the notice plan and appoint the parties' selected Settlement Administrator, JND Legal Administration; (4) direct notice to the Class by appropriate means; and (5) establish a schedule for a final approval hearing and attendant dates as proposed in Appendix A with an eye towards bringing this litigation to an end this year.

## II.     BACKGROUND

### A.     Litigation History

This Court is well-familiar with the underlying facts and history of this case; Plaintiffs only summarize them here. The case involves allegations that certain heavy duty trucks

manufactured and sold by Navistar included a defectively-designed emissions system. *See, e.g.*, Dkt. 573 at 1 (summarizing Plaintiffs' allegations). Plaintiffs contend that the defect resulted from Navistar's decision to use exhaust gas recirculation ("EGR") emissions technology to comply with Environmental Protection Agency emissions standards instead of selective catalytic reduction ("SCR") emissions technology. *Id.*; *see also* Proposed Third Am. Consol. Class Action Compl.[2]

This MDL was created in December 17, 2014. *See In re: Navistar MaxxForce Engines Mktg., Sales Practices & Prod. Liab. Litig.*, 67 F. Supp. 3d 1382, 1383 (J.P.M.L. 2014). This Court appointed Interim Co-Lead Counsel and Liaison Counsel on March 5, 2015. Dkt. 27. After initial mediation efforts failed, Plaintiffs and Navistar litigated this case for more than four years. Ex. B (Selbin Decl.) ¶ 30. During this time, the parties engaged in extensive discovery, including exchanging and reviewing more than 2.5 million documents, taking and defending more than 60 depositions, and litigating several critical motions before this Court. *Id.* at ¶¶ 26, 29. Plaintiffs retained and worked extensively with more than half a dozen consulting and testifying experts, including mechanical engineering experts prepared to testify whether and why the EGR-only design is defective, as well as economics experts prepared to testify about the damages they calculated were suffered by the Class. *Id.* ¶ 28. In March 2019, Plaintiffs fully

---

[2] Plaintiffs are submitting the Proposed Third Amended Consolidated Class Action Complaint with a Motion for Leave to Amend contemporaneously with this Motion for Preliminary Approval. This latest Complaint updates the list of Named Plaintiffs proposed as Class representatives for purposes of this Settlement; revises the Class definition to match the language used in this Settlement (but does not expand the Class for settlement purposes from the Class previously proposed for litigation); clarifies that allegations for state sub-classes are in the alternative to the alleged nationwide classes; and adds Pennsylvania to the list of state sub-classes alleged in the alternative.

drafted a motion for class certification and prepared attendant exhibits, including expert reports. *Id*. ¶ 29; Ex. C (Levitt Decl.) ¶¶ 13, 16; Ex. D (Audet Decl.) ¶ 20.

### B. Settlement Discussions

The parties mediated with the assistance of Judge Wayne Andersen, a retired judge in this District and a respected class action mediator. Ex. B (Selbin Decl.) ¶ 30. After earlier efforts at settlement failed, renewed mediation efforts began in June 2018 and continued for months, including six in-person negotiations in Chicago, dozens of hours on telephone conferences, and many dozens of email exchanges. *Id.* Negotiations were at arm's-length and often contentious. *Id.* In March 2019, Plaintiffs finalized their class certification motion and supporting expert reports. *Id.* at 29. On the literal eve of that filing, the parties reached a tentative agreement in principle. *Id.* In the months since, they have worked to finalize the agreement, and its terms are now embodied in the Settlement Agreement executed on May 28, 2019. *Id.*; Ex. A (Settlement Agreement).

## III. THE SETTLEMENT'S MATERIAL TERMS

Plaintiffs seek preliminary approval of the Settlement on behalf of the following class:

All entities and natural persons who purchased or leased a 2011-2014 model year vehicles equipped with a MaxxForce 11- or 13-liter engine certified to meet EPA 2010 emissions standards without selective catalytic reduction technology, provided that vehicle was purchased or leased in any of the fifty (50) States, the District of Columbia, Puerto Rico, or any other United States territories and/or possessions.

Excluded from the Class are: (1) all federal court judges who have presided over this Litigation and any members of their immediate families; (2) all entities and natural persons that have litigated claims involving Class Vehicles' allegedly defective EGR emissions system against Navistar to final, nonappealable judgment (with respect to those vehicles only); (3) all entities and natural persons who, via a settlement or otherwise, delivered to Navistar releases of their claims involving Class Vehicles' allegedly defective EGR emissions system (with respect to those vehicles only); (4) Defendants' employees, officers, directors, agents, and representatives, and their family members; (5) any Authorized Navistar Dealer of new or used vehicles; (6) any person or entity that purchased a

Class Vehicle solely for the purposes of resale (with respect to those vehicles only); (7) any person or entity that was a lessee of a Class Vehicle for fewer than thirty (30) days (with respect to those vehicles only); and (8) Idealease and Navistar Leasing Co. (lessees of Class Vehicles from these entities are part of the Class).

Ex. A (Settlement Agreement) § I.E.

A.     **The Settlement offers significant benefits to the Class.**

Navistar will pay $135 million in total non-reversionary compensation to the Class, presumptively divided into two funds: an $85 million Cash Fund and a $50 million Rebate Fund. *Id.* § III. Each Class Member will have the option, for each Class Vehicle owned or leased, to receive either up to $15,000 in documented costs relating to certain repairs from the Cash Fund (the "Prove-Up Option"), a set amount of cash from the Cash Fund without documentation of costs (the "Cash Option"), or a rebate on the purchase of a new Navistar truck from the Rebate Fund without documentation of costs (the "Rebate Option"). *Id.* § III.A.1-3.

Claims will be paid from the two Funds and will be reduced on a pro rata basis only if *both* Funds are oversubscribed (that is, if more valid claims are approved than there are dollars available in the Funds to pay those claims). *Id.* § III.C. In the event that only one of the Cash Fund or Rebate Fund is oversubscribed and the other Fund is undersubscribed, the funds remaining in the undersubscribed Fund will go toward paying valid, approved claims in the oversubscribed Fund (though no more than $35 million of the Rebate Fund shall go toward oversubscription of the Cash Fund, for a maximum Cash Fund of $120 million). *Id. In no event will any of the $135 million revert to Navistar*: if there is money remaining in the Cash Fund after all valid claims are calculated and any oversubscription of the Rebate Fund is satisfied, remaining funds will be re-allocated on a pro rata basis to previously-approved, valid claimants within the Cash Fund. *Id.* If there is any remaining rebate value in the Rebate Fund after all valid claims are calculated and any oversubscription of the Cash Fund up to $35 million is

satisfied, Additional Rebates Rebates to the Class Members who initially elected and qualified for the Rebate Option, subject to the same terms as the Initial Rebates (e.g., not stackable with each other or Initial Rebates). *Id.* The value of particular Class Member's Additional Rebate(s) will be the average value of that Class Member's Initial Rebate(s) ("Initial Rebate Value"). *Id.* Additional Rebates will be issued sequentially to eligible Rebate Claimants in ascending order of Initial Rebate Value, until the Rebate Fund is exhausted.[3] *Id.*

The parties ask this Court to appoint JND Legal Administration as the Settlement Administrator to provide notice to Class Members and to collect, process, approve or deny, and pay out claims while being jointly overseen by the parties. *See* Ex. A (Settlement Agreement) §§ I.II, IV.B. JND is experienced at successfully managing nationwide vehicle class actions, including acquiring class member data, delivering state-of-the-art notice to class members, creating easy-to-use websites for class members to check eligibility and basic benefit amounts, processing large and complex claims, calculating benefits, and efficiently communicating with class members. Ex. B (Selbin Decl.) ¶ 31. Settlement administration is estimated to cost $550,358. *Id.*

The specific terms of the three compensation options each Class Member may choose for each Class Vehicle they ever owned or leased are as follows.

### 1. The Prove-Up Option: prove damages up to $15,000

Each Class Member may prove damages of up to $15,000 per Class Vehicle owned or leased. Ex. A (Settlement Agreement) § III.A.3. Unlike the Cash Option or the Rebate Option,

---

[3] No member of the Settlement Class may be issued more than ten (10) rebates of any kind. *Id.* Should this limitation prevent the exhaustion of the Rebate Fund, then Judge Andersen shall have sole and final authority to order a fair distribution of the remainder of the Rebate Fund in the form of Additional Rebates or *pro rata* increases in Initial Rebates, so long as the net result is that Defendants pay the full $135 million in cash payments and rebates to the Class, including Attorneys' Fees, Costs, Service Awards, and Settlement Fees and Expenses. *Id.*

the Prove-Up Option is not allocated among multiple owners of the same truck; rather each owner and lessee—even of the same Class Vehicle—may prove damages paid by that owner or lessee up to $15,000. Such damages are available for "Covered Events," which include both the primary types of engine failures Plaintiffs' experts have connected to the alleged defect and secondary failures that occur within 30 days of a primary failure. *See id.* §§ I.K, I.L, III.A.3; *see also* Ex. F (Johnson Decl.) ¶¶ 17-21 (describing expert's work to identify such failures and explaining why these component failures result from the alleged defect). Class Members may recover all "Covered Costs," including parts and labor, towing, rental trucks, lost revenue, travel costs, employee wages, permits, and loading/unloading expenses. Ex. A (Settlement Agreement) §§ I.L, III.A.3. And these damages are available for up to *one million* miles, provided that no Class Member may receive more than $7500 for parts and labor costs incurred after the first 500,000 miles. *Id*. § III.A.3.

### 2. The Cash Option: $2,500 cash over the life of the truck

For any particular vehicle, Class Members may choose to claim up to $2,500 without any documentation other than proof of ownership/lease. *Id.* § III.A.1. The Cash Option is allocated between multiple Class Members who owned or leased the same Class Vehicle on a pro rata basis by months of ownership or lease. *Id.* Each month of ownership or lease is eligible for the following amounts, which reflect $2,500 divided by the average months since manufacture for each model year of Class Vehicle:

| Class Vehicle Model Year | Cash Amount Per Month Owned or Leased |
|---|---|
| 2011 | $26.59/month |
| 2012 | $29.07/month |
| 2013 | $33.33/month |

| Class Vehicle Model Year | Cash Amount Per Month Owned or Leased |
|---|---|
| 2014 | $39.06/month |

*Id.*

### 3. The Rebate Option: up to $10,000 off a new Navistar truck.

Each Class Member, for each Class Vehicle owned or leased, may select a rebate of up to $10,000 toward the purchase of a new Navistar Class 8 heavy duty truck. *Id.* § III.A.2. The rebates are applicable to the best negotiated retail purchase price (in addition to any other promotion, rebate, or discount) and valid for 18 months. *Id.* To protect the typical Class Member, any individual Class Member may receive a maximum of 10 rebates. *Id.*; *see also* Ex B (Selbin Decl.) ¶ 32 (explaining that capping the number of rebates any individual may receive ensures that large-scale vehicle owners do not deplete the rebate fund, helps to ensure that relief is more evenly spread across class members, and decreases the chance that the funds become oversubscribed).

Similar to the Cash Option, the Rebate Option is allocated between multiple owners/lessees of the same truck on a pro rata basis by months of ownership or lease. Settlement § III.A.2. Each month of ownership or lease is eligible for the following amounts, which reflect $10,000 divided by the average months since manufacture for each year of truck:

| Class Vehicle Model Year | Rebate Amount Per Month Owned or Leased |
|---|---|
| 2011 | $106.36/month |
| 2012 | $116.28/month |
| 2013 | $133.32/month |
| 2014 | $156.24/month |

*Id.*

### 4. Compensation for leased Class Vehicles.

#### a. Leases from Navistar.

Any Class Member who leased a Class Vehicle from Navistar, Navistar's corporate affiliates, or an Authorized Navistar Dealer will recover on the same terms as owners of Class Vehicles. *Id.* § III.B.1. Class Members who leased their vehicles to or from other Class Members for more than 30 days are each eligible for the Prove-Up option in full, or eligible for only half of the Cash Option or Rebate Option. *Id.* § III.B.2. Short-term lessees (30 days or less) are excluded from the Class; short-term lessors recover in full. *Id.* §§ I.E, III.B.2.

### B. The Settlement includes robust notice and a claims process.

The Settlement includes a state-of-the-art notice and claims process, including direct individual notice to members of the Class for whom contact information can be reasonably acquired from Navistar or through DMV data, plus a user-friendly online claims process that helps Class Members select from among their options. *See id.* § IV.C; Ex. A-2 (Short Form Notice); Ex. A-3 (Long Form Notice), Ex. A-4 (Email Notice).

Before selecting compensation options or submitting claims, Class Members will be able to enter their Class Vehicles' VINs and dates of ownership on the website and view the amounts they would receive (if their claims are valid) under the Cash Option and the Rebate Option. Ex. A (Settlement Agreement) §§ IV.C.4, IV.D.2. At that point, Class Members can either submit a claim form online or in hard copy after downloading it from the website or requesting by phone that a hard copy be mailed. *Id.* §§ IV.B, IV.C.4. To submit a claim, Class Members will first simply have to prove ownership or lease of their Class Vehicle(s), which they will be able to do by uploading basic ownership/lease documentation online (or mailing in hard copy).

*Id.* §§ I.BB-CC, IV.D.2.b.[4]  To simplify the ability of persons to confirm their status as Class

Members, Navistar will, to the extent reasonably possible, provide to the Settlement

Administrator records in its possession that identify this information for original U.S. owners or

lessees.  *Id.* §§ I.BB-CC, IV.D.2.b.  The Settlement Administrator will prepopulate the website

with that information for Class Members to review and confirm.  *See id.* § IV.C.4.  Class

Members will then be able to choose one of the three compensation options.  *See id.* §§ III,

IV.D.2.a.

      Only if Class Members choose the Prove-Up Option will they be required to submit

further documentation, which they will be able to upload to the website or mail as hard copies.

*Id.* §§ III.A.3, IV.C.4.  Even after submitting the claim form, a Class Member that initially chose

the Prove-Up Option may instead choose the Cash Option at any time prior to the Settlement

Administrator's determination of the validity or amount of the Prove-Up Option claim.  *Id.*

§ III.A.3.

      If Class Members dispute the amount the Settlement Administrator awards (or dispute the

Settlement Administrator's rejection of their claim), they may appeal the award decision once to

the Settlement Administrator.  Both parties' counsel and the Settlement Administrator will

review all appeals and the Settlement Administrator will make a final determination after

reviewing the Class Member's basis for the appeal and both parties' counsel's responses.

---

[4] These include vehicle title, vehicle purchase agreement, vehicle lease agreement, dealer
invoice, insurance documentation, financing documentation, vehicle registration, or repair
invoice documents sufficient to identify the Class Member as the vehicle owner, purchaser, or
lessee.

## IV.    <u>LEGAL STANDARD</u>

Under Rule 23(e)(1), the Court "must direct notice" to Class Members "if giving notice is justified by the parties' showing that the court will likely be able to:

> (i)      approve the proposal [as fair, reasonable, and adequate] under Rule 23(e)(2); and
>
> (ii)     certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1).

## V.    <u>THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE</u>

Under recent modifications to Rule 23, a court must determine whether it "will be likely" to grant final approval under Rule 23(e)(2).  The amended Rule directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee note (explaining that these factors "focus" the inquiry on "the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal").  Those factors, which largely reflect and "overlap with the factors previously articulated by the Seventh Circuit," are readily satisfied here.  *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-666, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018).

A.     **The Class Representatives and Class Counsel are adequate and have served the best interests of the Class over the past four years.**

Under the first Rule 23(e)(2) factor, courts consider whether the class representatives and class counsel will represent the class adequately.  Fed. R. Civ. P. 23(e)(2).  Courts analyze this factor in the same manner that they evaluate adequacy under Rule 23(a)(4).  *See O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019 WL 359981, at *15 (E.D.N.Y. Jan. 28, 2019).  This means that courts consider: (1) whether class representatives are "part of the class and possess the same interest and suffer the same injury as the class members;" (2) if class representatives "have some commitment to the case, so that the 'representative' in a class action is not a fictive concept;" and (3) "the 'competency and conflicts of class counsel.'"  *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343 (N.D. Ill. 2010) (quotation omitted).  Named Plaintiffs (the proposed Class representatives) and Interim Co-Lead Counsel (the proposed Class counsel) have demonstrated through four years of litigation that they satisfy these three prongs:

- The proposed Class representatives have the same alleged injury and interest as all other Class Members—they purchased or leased the same allegedly defective trucks, and they share the Class's interest of maximizing their recovery from the same set of alleged vehicle defects.  Under the proposed Settlement, all Class Members have the same recovery options.

- The proposed Class representatives have already shown their commitment to this case and to the Class: every proposed Class representative responded to extensive discovery requests and sat for deposition.  *See* Ex. B (Selbin Decl.) ¶ 26.

- Plaintiffs' counsel is adequate, as this Court has already held in appointing Interim Co-Lead Counsel.  *See* Dkt. 27.  Interim Co-Lead Counsel have "have invested substantial time and resources in this case" including "negotiating a detailed settlement" and "have experience pursuing [defective vehicle]-class-action cases and do not . . . have interests that conflict with those of the class." *In re AT&T*, 270 F.R.D. at 344; *see also* Ex. B (Selbin Decl.) ¶¶ 1-20; Ex. C

        (Levitt Decl.) ¶¶ 1-10; Ex. D (Audet Decl.) ¶¶ 1-12; Ex. E (Bellows Decl.)
        ¶¶ 1-2.

In sum, "the class representatives and class counsel have adequately represented the class." Fed.

R. Civ. P. 23(e)(2).

### B.     The Parties negotiated the Settlement at arm's length.

Under the second Rule 23(e)(2) factor, courts examine whether the parties negotiated the

settlement at arm's length. This factor could not be reasonably disputed. When the parties first

attempted to mediate before Judge Andersen in 2016, the mediation efforts failed. *See Hale*,

2018 WL 6606079, at *3 (failure of initial mediation can be a sign of arm's length negotiation).

As explained above, the parties only reached the current Settlement after *two years* of additional

mediation efforts, with numerous apparent failures. Ex. B (Selbin Decl.) ¶ 30. Indeed, the

parties reached a tentative agreement in principle only hours before Plaintiffs were to file their

motion for class certification and supporting expert reports. *See id.* ¶ 29. This is the epitome of

arm's-length negotiation. *See Hale*, 2018 WL 6606079, at *3.

### C.     The Settlement provides excellent relief

The Settlement provides substantial relief for *all* Class Members: $135 million in non-

reversionary relief, which is an objectively substantial recovery for the Class. As explained

above, all Class Members can choose the form of recovery they prefer for each Class Vehicle

they own(ed) or lease(d): up to $2,500 cash or up to $10,000 rebate on a new Navistar truck with

mere proof of ownership/lease, or up to $15,000 for documented costs relating to the alleged

defect. Therefore, the Settlement provides substantial monetary relief, tailored to the Class

Members' specific injuries.

1.    __The Settlement is superior to the costs, risks, and delay of trial and appeal__

The Settlement is a significantly better outcome than additional litigation.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  If Plaintiffs risked reaching for the prospect of greater relief through further litigation, "all that is certain is that plaintiffs would have spent a large amount of time, money and effort."  *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976).  Despite Plaintiffs' confidence in the strength of their case, uncertainty—both on a number of legal issues and at trial—significantly impacts the likely outcome of this litigation.  Class certification would have been hotly disputed, because Navistar would likely argue that Class Members' varying maintenance and use patterns impact performance in individualized ways.  And while Plaintiffs believed their liability case to be very strong, damages would also be uncertain.  Most Class Members were able to either use their trucks the majority of the time or sell them, and proving that Class Members lost resale value would require convincing a jury that Class Members' loss of resale value was impacted by the alleged defect far more than any issues about individual negotiating.  Proving liability and damages might be especially difficult for Class Members who purchased their trucks in later years, after concerns with these trucks' performance became widely known and prices correspondingly discounted.

The above challenges are not hypothetical.  Individual plaintiffs have over the years filed numerous state court actions against Navistar, and with limited exceptions those cases have generally not resulted in favorable results for the plaintiffs.  In prior briefing to this Court, Navistar identified 31 individual cases filed against it in state court regarding the MaxxForce engines.[5]  Dkt. 269 at 34-36.  To Plaintiffs' knowledge, only two individual plaintiffs have

---

[5] Navistar won summary judgment on all claims in at least two of those cases, and on all claims but breach of warranty in at least two others.  *Id.* at 17.

obtained favorable jury verdicts, and compensatory damages in those cases were $44,444[6] per truck and $13,750[7] per truck (in the latter case, less than the $15,000 per truck available under this Settlement's Prove-Up Option).

Those plaintiffs won additional punitive damages—$20 million in *Milan* and $1.025 million in *Dutch Maid*—but punitive damages are of limited value for assessing the potential range of results to compare to this Settlement for multiple reasons. First, punitive damages standards, which vary across states where individual plaintiffs might bring suit, are higher than the standards for compensatory damages. Convincing a jury of liability alone is challenging, let alone that Navistar's conduct was sufficiently egregious for punitive damages. Punitive damages, after all, are not designed to compensate victims but to punish defendants, and plaintiffs are "not *entitled*, as of right, to an award of punitive damages," even if the jury finds the defendant "guilty of oppression, fraud, or malice." *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 69 P.3d 965, 971 (Cal. 2003) (internal quotation marks omitted). Second, Navistar might argue that due process limits the amount of punitive damages victims can recover from the same defendant for the same conduct, such that even if some early plaintiffs might succeed at achieving high verdicts, later plaintiffs might be barred from further punitive damages. *See generally BMW of N. Am. v. Gore*, 517 U.S. 559 (1996) (excessive punitive damage awards, at least in an individual case, can "enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment"). Third, individual lawsuits are not cleanly comparable to this Class settlement, because Plaintiffs faced significant risks to class certification and damages

---

[6] *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, No. 14-285 (Tenn. Cir. Ct.) ($10.8 million in compensatory damages for 243 trucks).

[7] *Dutch Maid Logistics, Inc. v. Navistar Inc.*, No. 15CV0129 (Ohio Com.Pl.) ($250,000 in compensatory damages for 20 trucks).

that the individual state court plaintiffs did not. Individual plaintiffs can present the allegedly fraudulent oral statements of individual salespersons, for example, in ways that are more challenging to present in the class context. *See* Dkt. 269 at 17 (plaintiff's verdict in *Milan* was based at least in part on evidence of oral representations during face-to-face meetings).

Even if Plaintiffs overcame all these challenges, Navistar would likely appeal any adverse verdict (as Navistar has done in the two individual state-court MaxxForce cases it lost[8]), adding both risk and delay. For this reason, "[r]egardless of the outcome of these proceedings, there can be no question that they would have added significant costs and delay." *Hale*, 2018 WL 6606079, at *4. Thus, Plaintiffs' options were not between settlement today and the possibility of a superior, if much riskier outcome in the near future, but between settlement today and a riskier outcome many years down the road. *See Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now."). Ultimately, given the significant costs, risks, and delay of trial and appeal—including the risks of being forced into individual litigation and of an unfavorable jury verdict or dismissal resulting in zero compensation—and the significant benefits Class Members can receive more quickly in this Settlement, this Settlement is more than adequate and represents a hard-fought victory for the Class. *See* Ex. B (Selbin Decl.) ¶ 32 (expressing opinion based on experience regarding Settlement); Ex. C (Levitt Decl.) ¶ 17 (same); Ex. D (Audet Decl.) ¶¶ 22-23 (same).

---

[8] *See Milan Supply Sols., Inc. v. Navistar, Inc.*, No. W2018-00084-COA-R3-CV (Tenn. Ct. App.); Tyson Fisher, "Navistar loses $1.3M in second MaxxForce engine lawsuit," *Land Line* (Mar. 7, 2019), http://www.landlinemag.com/story.aspx?storyid=73866 (referencing Navistar's pending appeal from *Dutch Maid Logistics, Inc. v. Navistar Inc.*, No. 15CV0129 (Ohio Com.Pl.)); *see also infra* nn. 7-8.

This Settlement is in fact superior to a recent similar nationwide settlement regarding diesel engines with an allegedly defective emission system that was approved by the District of New Jersey, *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation*, MDL No. 2540 (D.N.J.).  In that case, the class settled for a fund of $60 million rather than the $135 million here.  *See* https://www.enginesettlement.com/Home/FAQ#faq7.  Similar to this Settlement, class members there (owners lessees of certain Caterpillar engines) could choose from compensation options for each engine owned: $500 cash without documentation of repairs (versus up to $2,500 here), or up to $5,000, $10,000, or $15,000 in eligible losses depending on the number of defect-related repairs.  *Id.*  Here, Class Members can prove up to $15,000 in losses regardless of the number of repairs their trucks required, plus they have the additional option of up to a $10,000 rebate, unavailable in the Caterpillar settlement.  Like here, the options in Caterpillar might be adjusted up or down depending on the number of claimants.  *Id.*  While in the Settlement here the Class releases only economic-loss claims and not claims for personal injury or property damage besides to the truck or its cargo, the Caterpillar lawsuit released *all* claims against Caterpillar about the engines at issue.  *See* https://www.enginesettlement.com/Home/FAQ#faq9.  The Caterpillar settlement supports a finding that this Settlement is adequate.

**2.      The Settlement provides for state-of-the-art claims processing and relief to the class.**

The Court also considers whether the Settlement is adequate in light of the method of processing claims and distributing relief to the class.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  It is. The parties and JND believe based on their own knowledge and experience with prior automotive class action settlements that contact information is available for all or virtually all purchasers and lessees from Navistar, state department of motor vehicles and various third parties. Ex. B (Selbin Decl.) ¶ 33.  Notice will thus reach the overwhelming majority of the

Class, and the Settlement Administrator will, to the extent practicable, be able to pre-populate the settlement website with ownership information once a Class Member enters a VIN and other basic information.

As explained above, Class Members who choose the Cash Option or Rebate Option will need to submit merely basic proof of ownership/lease and will receive their cash or rebate in the mail, in an amount calculated based on a simple formula and shown to them before making their decision. Class Members who choose the Prove-Up Option will be able to submit their documentation of Covered Costs online, will be able to choose to switch to the Cash Option at any time before their Prove-Up Option award is determined, and will have the opportunity to appeal any decision once. Thus, despite the potential complexity of claims and damages that exist in this case, Class Members' claims will be processed smoothly, tailored to each Class Members' preferences and injuries, with protections for Class Members built in.

### 3. Attorneys' fees are fair.

The next consideration for adequacy of relief is the terms of the Settlement regarding attorneys' fees. Fed. R. Civ. P. 23(e)(2)(C)(iii). If this Court grants final approval to this Settlement and appoints Interim Co-Lead Counsel as Class Counsel, Class Counsel will seek an award of attorney's fees and costs not to exceed $40 million in total, to be paid out of the Cash Fund. Settlement § V.A. The Settlement contains no agreement limiting Navistar's rights to object to Class Counsel's fees and costs request (i.e., no "clear-sailing" agreement). *See id.* This Court will determine the appropriate amount to award to Class Counsel, and if the Court chooses to award less than the requested amount, any unawarded attorneys' fees or costs will revert to the Class, not Navistar. *See id.* In other words, to the extent that the Court later finds any aspect of attorneys' fees or costs unsupported or unwarranted, the Class alone will benefit from that determination. The undersigned respectfully stress, however, that they will demonstrate to this

Court that their requested fees and costs are fair and consistent with Seventh Circuit precedent based on the exceptional Settlement and the significant amount of work, and money spent, by counsel to litigate this case and negotiate this recommended Settlement.

### 4. There are no agreements between the parties separate from the Settlement.

Rule 23(e)(2)(C)(iii) instructs the court to consider any agreements between the parties in addition to the Settlement. No agreements exist separate from the Settlement in this case. The parties will request to file two portions of the Settlement Agreement with the Court under seal. Ex. A (Settlement Agreement) § VI.E.2-3. One regards Navistar's right to withdraw from the Settlement, and to render it null and void, if the total number of Class Members or Class Vehicles opted out of the Settlement exceed certain thresholds. *Id.* § VI.E.2. The other regards Co-Lead Class Counsel's right to withdraw from the Settlement, and to render it null and void, if both the Cash Fund and the Rebate Fund become oversubscribed under certain circumstances. *Id.* § VI.E.3. Plaintiffs request that these thresholds be filed under seal so as not to permit Class Members to strategically attempt to invalidate the Settlement.

### D. The Settlement treats Class Members equitably

The final factor for preliminary approval is whether the Settlement treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does: all Class Members may select from the same three options. Two are based solely on length of ownership, and the third allows any Class Member to prove actual damages. No Class Member has any option that any other does not. Notably, a nationwide Settlement treats Class Members far more equitably than individual trials, which have already resulted in two individual entities receiving favorable jury verdicts including punitive damages while others received nothing at all.

## VI.   THE PROPOSED SETTLEMENT CLASS LIKELY WILL BE CERTIFIED

Plaintiffs respectfully submit that the Court can likely certify the class for settlement

purposes.  Fed. R. Civ. P. 23(e)(1)(ii).  Class certification is governed by Rule 23(a) and (when

the class seeks damages) Rule 23(b)(3).  The general standards for class certification for

purposes of litigation apply to class certification for settlement, except that the court need not

consider potential trial management problems.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 620 (1997).[9]  Rule 23(a) has four requirements:

1. **Numerosity**.  The class is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).

2. **Commonality**.  At least one legal or factual question is common to every member of the class.  Fed. R. Civ. P. 23(a)(2).

3. **Typicality**.  The named plaintiffs have the same type of claim as other class members.  Fed. R. Civ. P. 23(a)(3).

4. **Adequacy**.  The named plaintiffs and their counsel fairly and adequately represent the interests of absent class members.  Fed. R. Civ. P. 23(a)(4).

Rule 23(b)(3) has two additional requirements for classes seeking damages (like the Class here):

5. **Predominance**.  Legal and factual issues that can be resolved on a classwide basis are more important than those that could only be resolved individually.  Fed. R. Civ. P. 23(b)(3).

   **Superiority**.  A class action is superior to many individual lawsuits.  Fed. R. Civ. P. 23(b)(3).

### A.   The class is sufficiently numerous.

The first of Rule 23(a)'s prerequisites is that any proposed "class is so numerous that

joinder of all members is impracticable."  Fed. R. Civ. P 23(a)(1).  This is not a high bar: a "class

---

[9] Navistar contests that the claims at issue here are suitable for class treatment.  *See* Dkts. 423-24 (Navistar's Answers and Affirmative Defenses to Plaintiffs' Second Amended Consolidated Class Action Complaint).  But many of Navistar's concerns relate to manageability, and manageability is not a consideration for a settlement class.  *Amchem*, 521 U.S. at 620.

of 40 or more is generally sufficient," and "Courts in this District have certified classes with as few as 18 members." *Beley v. City of Chicago*, No. 12-9714, 2015 WL 8153377, at *2 (N.D. Ill. Dec. 7, 2015) (Blakey, J.). In discovery, Navistar produced a spreadsheet bates-stamped MDLNAV00708727 and purporting to show class vehicle purchases. That spreadsheet, though incomplete, included more than 4,600 unique purchasers in the United States. Ex. B (Selbin Decl.) ¶ 27. Therefore, numerosity is easily met. Navistar has reported to Plaintiffs' counsel that it has identified approximately 66,000 VINs for Class Vehicles, although that does not account for the owners or lessees that may be excluded from the Class definition. *Id.* Therefore, numerosity is easily met.

### B. There is at least one common question likely to drive the resolution of this litigation.

Rule 23(a)(2) requires that there is at least one question "of law or fact common to the class," such that the answer to that question is "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 345, 359 (2011). Plaintiffs do not, however, need to show that they ultimately will prevail before a jury: "Rule 23 allows certification of classes that are fated to lose as well as classes that are sure to win." *Schleicher v. Wendt*, 618 F.3d 679, 686 (7th Cir. 2010); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 459 (2013)* (same).

Here, every Class Vehicle uses the same EGR-only design. *See, e.g.*, Ex. G (Cellitti Tr.) at 189:5-190:13 (former Navistar executive agreeing that customers could not request different EGR and emissions components when ordering trucks). The Seventh Circuit has held expressly that commonality is met where, as here, plaintiffs present evidence that a particular design common to each class member's product is defective. *Butler v. Sears, Roebuck & Co.*, 727 F.3d

796, 801-02 (7th Cir. 2013) (*Butler II*).  Resolution of each claim in this case would be driven by the answers to numerous questions common to the Class, including but not limited to:

- For statutory fraud: (1) whether the Class Engines are defective, (2) whether Navistar knew (or should have known) of the defect pre-sale, and (3) whether Navistar violated prohibitions on deceptive or unfair practices by failing to disclose the defect.  *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (certifying statutory fraud claims in a case alleging low quality coffee pods).

- For breach of express warranty: (1) the existence of a defect; (2) whether Navistar's warranties required it to fix the defect; and (3) whether Navistar breached its warranties by failing to do so.  *See Butler II*, 727 F.3d at 801-02 (certifying express warranty claims in a moldy washer case).

- For breach of implied warranty: (1) whether the Class Engines came with an implied warranty of merchantability and (2) whether the Class Engines are fit for ordinary use.  *See Butler II*, 727 F.3d at 801-02 (certifying implied warranty claims in a moldy washer case).

- For unjust enrichment: (1) whether the Class Engines are defective (2) whether Navistar knew (or should have known) of the defect pre-sale; and (3) whether it is unjust for Navistar to retain the proceeds it gained by failing to disclose the defect.  *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173-75 (9th Cir. 2010) (certifying unjust enrichment claims in a defective vehicle case).

These common questions of law and fact satisfy Rule 23(a)(2).  Courts have found commonality met for all four of Plaintiffs' claims in other cases alleging uniform vehicular defects.  *See, e.g.*, *Wolin*, 617 F.3d at 1173 (consumer fraud, implied warranty, unjust enrichment claims involving allegedly defective wheel alignment); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (express warranty claims involving allegedly defective throttle body); *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 552 (5th Cir. 2003) (implied warranty claims involving inadequate brakes).  The same is true in this case, where "[t]here is a single, central, common issue of liability:" whether EGR-only is "defective."  *Butler II*, 727 F.3d at 801.

### C.    The proposed Class representatives' claims are typical.

The third requirement for class certification is that "the claims . . . of the representative parties [be] typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied if the class representatives' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory."  *Kramer v. Am. Bank & Trust Co.*, No. 11-8758, 2017 WL 1196965, at *6 (N.D. Ill. Mar. 31, 2017) (Lee, J.) (citation omitted).  This inquiry "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large."  *Id.* at *6 (citation omitted).

The Class representatives' claims are typical of the Class Members' claims because they challenge the same conduct and make the same legal arguments as other Class Members.  All proposed Class Members, including the Class representatives, own or owned the same set of Class Vehicles designed and manufactured by Navistar, all of which contain the same alleged defects.  At bottom, typicality is met for the same reason that commonality is met:  the proposed Class representatives assert that Navistar is liable because the EGR-only design is defective.  This claim will be proven or disproven uniformly for all Class Members, not just some.  *Cf. Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (explaining that in some cases the "commonality and typicality requirements of Rule 23(a) tend to merge"); *see also Mednick v. Precor, Inc.*, 320 F.R.D. 140, 153 (N.D. Ill. 2017) (Leinenweber, J.) (same).

### D.    The Class representatives and Interim Co-Lead Counsel are adequate.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  The Class representatives and Interim Co-Lead Counsel are adequate for the reasons stated in support of Rule 23(e)(2)(A).  *See supra* Part V.A.

E.    **Common legal and factual issues predominate over individual issues.**

A class seeking money damages must show that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This is not "determined simply by counting noses." *Butler II*, 727 F.3d at 801. Instead, a court must resolve if the common issues "are more prevalent or important" than any individual issues. *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016). Class certification may be "proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses." *Tyson Foods*, 136 S. Ct. at 1045; *see also, e.g.*, *Suchanek*, 764 F.3d at 756.

Here, the numerous questions common to the Class, including those listed above to demonstrate commonality under Rule 23(a)(2), predominate over any individual issues. The key elements of the Plaintiffs' claims—the existence of a defect, Navistar's knowledge of that defect, the materiality of that defect to reasonable consumers, and the existence and amount of resulting damages, for example—are common issues. This is true for Plaintiffs' statutory fraud claims, both in Illinois and in the other states with similar statutes. *See, e.g.*, *Flynn v. FCA US LLC*, 327 F.R.D. 206, 226 (S.D. Ill. 2018) (for Illinois statutory fraud claim, "whether Defendants knew the vehicles were defective . . . poses a common question that predominates over individual questions that may arise."); *Suchanek*, 764 F.3d at 756-57 ("the same legal standards" govern statutory fraud claims in California, Illinois, New Jersey, and North Carolina); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 252 F.R.D. 83, 97-99 (D. Mass. 2008) (the same as to Florida, Idaho, Illinois, New Jersey, and Washington statutory fraud claims). It is true for Plaintiffs' express warranty claims. *See Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 361 (7th Cir. 2012) (*Butler I*) ("[t]he basic question in the litigation—were the [products] defective" predominated). It is true for Plaintiffs' implied warranty claims. *See*

*Butler II*, 727 F.3d at 801-02 (whether the design was defective is the central question for this claim, and it predominates over all others); *see also, e.g.*, *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 855-56 (6th Cir. 2013). And it is true for Plaintiffs' unjust enrichment claims, which are "well-suited for . . . class treatment by virtue of [their] uniform availability and focus on the defendant's ill-gotten gain." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 675 (S.D. Fla. 2015); *Wolin*, 617 F.3d at 1172, 1176 (reversing denial of class certification of unjust enrichment claims).

**F.     Class resolution is superior to alternatives.**

The superiority inquiry considers whether a class action is superior to many individual actions. Fed. R. Civ. P. 23(b)(3). In this case, there are both low-value and high-value individual claims, both of which make a class action a superior mechanism.

First, many class members own only a few Class Vehicles. Their individual damages, though significant to them, are not substantial enough to justify the costs of an entire lawsuit. *See Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits . . . ."). This suffices to establish superiority in class actions. *See, e.g.*, *Suchanek*, 764 F.3d at 759.

Second, this case includes some plaintiffs with high-dollar claims, some of which have pursued individual cases during the pendency of this MDL. As explained above, successful high-dollar verdicts are challenging and rare, and not all individual plaintiffs can count on the punitive damages that have made up the bulk of the two successful plaintiffs' awards to date. *See supra* Part C.1. Nonetheless, multimillion-dollar verdicts have happened, and such cases also compel a finding of superiority. Navistar can sustain only so many eight-figure verdicts. Class certification permits every claimant to pursue Navistar simultaneously, ensuring that a judgment is shared equitably. *Cf., e.g.*, *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551,

562 (N.D. Ill. 2015) (granting class certification, and explaining that "[t]he relatively substantial recovery awaiting many of the [class members], standing alone, does not defeat superiority").

## VII.    THE PROPOSED NOTICE SATISFIES RULE 23(E)(1) AND DUE PROCESS

If the Court preliminarily approves the Settlement, it must separately consider whether the proposed notice is appropriate.  *See* Fed. R. Civ. P. 23(e)(1) (explaining that the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal"). "Under F.R.C.P. 23(c)(2), members of the Settlement Class . . . are entitled to the 'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'  Additionally, Rule 23(e) mandates that notice of compromise of a class action must 'be given to all members of the class in such manner as the court directs.'"  *Mangone v. First USA Bank*, 206 F.R.D. 222, 231 (S.D. Ill. 2001).  But neither Rule 23 nor due process require "actual notice to all class members," which sometimes "might be *impossible*."  *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) (emphasis in original).

The proposed notice satisfies due process and the Federal Rules.  Because data on original and subsequent purchasers and lessees is available from Navistar, State DMVs and/or various third parties, the parties expect the rate of direct notice to be nearly complete.  As explained above, the parties have selected and ask the Court to appoint JND as the Settlement Administrator because of its experience at nationwide vehicle class actions, including the type of data acquisition and notice delivery required here.  *See supra* Part III.A; Ex. B (Selbin Decl.) ¶¶ 31.  In addition to mailing notice, JND will publish information about the Settlement online, where it will be accessible by search engine.  Ex. A (Settlement Agreement) § IV.C.4.  The Long Form Notice includes all information required by Fed. R. Civ. P. 23(c)(2)(B).  *See* Ex. A-3 (Long Form Notice).  Specifically, it provides detailed information concerning: (a) the rights of Class

Members, including how and by when to lodge objections or opt out; (b) the nature of the litigation and the claims at issue; (c) the proposed Settlement; (d) the recovery options available to Class Members; (e) the process for filing a proof of claim; (f) the fees and expenses to be sought by Plaintiffs' counsel; and (g) the date of the fairness hearing. *See id.* It further advises Class Members on how to obtain additional information about the Settlement, including how to access the FAQ section on the Settlement Administrator's website. *See id.* As in *Mangone*, the class notice is "easy to read" and "easily understandable by the layperson," and "[t]o the extent a Settlement Class Member has a question after reading the Class Notice, he or she is directed to call a toll-free number" or to visit the website "where the Class Member can obtain answers to commonly asked questions." *Mangone*, 206 F.R.D. at 232.

The proposed order for preliminary approval of the Settlement mandates that within 60 days of the Court's order preliminarily approving the Settlement, the Settlement Administrator shall provide a declaration that it has substantially completed initial mailing and e-mail of notice to Class Members.

The proposed Notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Thus, the proposed method of notice described above satisfies due process requirements. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also, e.g.*, *Mangone*, 206 F.R.D. at 231-34; *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 968-69 (N.D. Ill. 2011).

## VIII.   <u>CONCLUSION</u>

For the above reasons, Plaintiffs respectfully ask the Court to grant their motion, and take the first steps of approval under Rule 23(e), specifically to: (1) find that it will likely be able to

approve the Settlement; (2) find that it will likely be able to certify the Settlement Class;

(3) approve the notice plan and appoint the parties' jointly-selected Settlement Administrator,

JND Legal Administration; (4) direct notice to the Class; and (5) establish a schedule for a final

approval hearing and attendant dates as proposed in Appendix A with an eye towards bringing

this litigation to an end this year

Respectfully submitted, May 29, 2019,


*/s/ Adam J. Levitt*
Adam J. Levitt
alevitt@dlcfirm.com
DICELLO LEVITT & CASEY, LLC
10 North Dearborn Street, 11th Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

*Interim Co-Lead Counsel*


*/s/ Jonathan D. Selbin*
Jonathan D. Selbin
jselbin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN
250 Hudson Street, 8th Floor
New York, New York 10013
Telephone: (212) 355-9500

*Interim Co-Lead Counsel*


*/s/ William M. Audet*
William M. Audet
waudet@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, California 94105
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

*Interim Co-Lead Counsel*


*/s/ Laurel G. Bellows*
Laurel G. Bellows
lbellows@bellowslaw.com
THE BELLOWS LAW GROUP, P.C.
209 South LaSalle Street, #800
Chicago, Illinois 60604
Telephone: (312) 332-3340

*Liaison Counsel*

## APPENDIX A

Plaintiffs propose the following schedule for further settlement proceedings:

| Event | Proposed Date (based on hypothetical entry of preliminary approval order June 14, 2019) |
|---|---|
| Settlement Administrator provides the Court a declaration that it has substantially completed initial mailing and email of notice ("Notice Date") | **August 13, 2019** (60 days after entry of preliminary approval order) |
| Motion for final settlement approval due<br><br>Motion for Attorney's Fees and Costs and Service Awards to Named Plaintiffs due | **September 12, 2019** (90 days after entry of preliminary approval order) |
| Objection and Opt-out deadline | **October 12, 2019** (60 days after Notice Date) |
| Settlement Administrator provides initial Opt Out List to Court and parties' counsel | **October 15, 2019** (63 days after Notice date; 21 days prior to Fairness Hearing) |
| Any reply papers necessary regarding final approval due | **October 29, 2019** (7 days prior to Fairness Hearing) |
| Fairness Hearing | **November 5, 2019** (82 days after Notice Date) |
| Settlement Administrator mails and emails reminder to Class Members of impending claims and other deadlines | **April 17, 2020** (15 days prior to deadline to file Claim Forms; pushed forward one day because fell on Saturday) |
| Deadline for Class Members to submit Claim Forms | **May 3, 2020** (180 days after Fairness Hearing) |

## CERTIFICATE OF SERVICE

I, Jonathan D. Selbin, hereby certify that on May 29, 2019 a copy of the foregoing document was filed electronically using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Jonathan D. Selbin
Jonathan D. Selbin