**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation** | **Master Case No. 1:14-cv-10318** |
| | **This filing applies to: All Class Cases** |
| | **Judge Joan B. Gottschall** |

**OBJECTION OF FOUR FLEET CLASS MEMBERS TO FINAL APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.     Introduction ............................................................................................................... 1

II.    The Court's Scrutiny of the Fairness, Reasonableness, and Adequacy of the Proposed Settlement Must be Even Greater in the Absence of Class Certification .......... 2

III.   The Proposed Settlement is Fundamentally Unreasonable and Inadequate as it Requires a Sweeping Release of Claims Against Navistar Yet Fails to Provide Any Compensation to Class Members for Lost Resale Value Damages .......................... 3

       A.    Although Class Counsel and Plaintiffs Repeatedly Emphasize the Lost Resale Value of Class Vehicles and the Resulting Damages, None of the Proposed Compensation Options Includes Lost Resale Value ............................. 4

            1.    The Cash Option Is Inadequate and Not Even Intended to Compensate for Lost Resale Value Damages ........................................... 6

            2.    The Rebate Option Provides In-Kind Compensation of Substantially Less Value Than Cash, with Significant Restrictions That Further Reduce its Adequacy .......................................................... 7

            3.    The Prove-Up Compensation Option Expressly Excludes Lost Resale Value Damages .............................................................................. 9

       B.    The Proposed Settlement Unfairly Treats Class Members Unequally, Favoring Those Best Represented by Named Plaintiffs ...................................... 10

IV.   CONCLUSION ......................................................................................................... 12

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ....................................................2

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)........................................3, 8, 9, 10

*Grunin v. International House of Pancakes*,
    513 F.2d 114 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d
    93 (1975)....................................................2

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................3

*Malchman v. Davis*,
    706 F.2d 426 (2d Cir.1983)........................................2

*Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
    834 F.2d 677 (7th Cir. 1987) ....................................................2

*Parker v. Time Warner Entm't Co., L.P.*,
    239 F.R.D. 318 (E.D.N.Y. 2007) ....................................................3

*Piambino v. Bailey*,
    610 F.2d 1306 (5th Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 568, 66
    L.Ed.2d 469 (1980) ........................................2, 9, 10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997), *aff'd sub nom. In re Prudential Ins. Co. Am.
    Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998)............................3

*Reynolds v. Beneficial Nat. Bank*,
    288 F.3d 277 (7th Cir. 2002) ....................................2, 3, 10

*Sala v. National RR Passenger Corp.*,
    721 F.Supp. 80 (E.D.Pa.1989) ....................................................2

*Sullivan v. DV Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2010), *cert. denied sub nom.*, *Murray v. Sullivan*, 132 S.
    Ct. 1876 (2012) ....................................................3

*In re Sw. Airlines Voucher Litig.*,
   No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013), *aff'd as
   modified*, 799 F.3d 701 (7th Cir. 2015) ...................................................................8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ...................................................................................7

*True v. Am. Honda Motor Co.*,
   749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...................................................................9

**Other Authorities**

7B Fed. Prac. & Proc. Civ. § 1797.1 (3d ed. 2019) ......................................................9

FED.R.CIV.P. 23(e).........................................................................................................2

## I.     Introduction

Class members Ferguson Enterprises, LLC, Southern California Edison Co., The Walt Disney Company, and US Foods, Inc. (collectively "Objectors") hereby object to the proposed Settlement Agreement as inadequate and unfair for failing to compensate class members for *any* lost truck value – the single largest category of damages incurred by class members as a result of defective truck engines manufactured and sold by Defendant Navistar, Inc. (collectively, with Co-Defendant Navistar International Corporation, "Navistar").[1]

Although Plaintiffs' Complaint emphasized Class Vehicles' "significant diminished value on the resale market" as a critical component of damages, any options for recouping lost resale value have been inexplicably omitted from the compensation options under the proposed settlement.  Further, the three compensation options that *are* included in the settlement significantly undercut the value of potential claims and discriminate against fleet owners and indirect lessees in favor of the more adequately represented individual truck owners.

As a fiduciary of the class, the Court must scrutinize the adequacy, reasonableness, and fairness of the proposed settlement, and do so with even greater scrutiny in the absence of class certification.  Given the lack of compensation for lost resale value, combined with the inadequate and inequitable remaining compensation options, Objectors urge the Court to protect the interests of *all* class members by instructing the parties to include lost resale value as a Covered Cost. This proposed modification will fairly and adequately compensate the entire class.  Without this change, the proposed settlement requires class members to waive their most significant claims

---

[1]     Attached as exhibits hereto are the following materials required by Pretrial Order No. 29: Exhibit 1 (Objectors' contact information); Exhibit 2 (Objectors' identification of Class Vehicles); Exhibit 3a-d (Objectors' Affidavits attesting to membership in the class and authority to act on each company's behalf); and Exhibit 4 (Objectors' statement of intent to appear at Fairness Hearing).

for Class Vehicles and is thus unfair and should not be approved.

## II. The Court's Scrutiny of the Fairness, Reasonableness, and Adequacy of the Proposed Settlement Must be Even Greater in the Absence of Class Certification

FED.R.CIV.P. 23(e) has been interpreted to require courts to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." 2 NEWBERG & CONTE § 11.41, at 11–88 to 11–89. "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members . . .. [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *Malchman v. Davis,* 706 F.2d 426, 433 (2d Cir.1983); *Sala v. National RR Passenger Corp.,* 721 F.Supp. 80 (E.D.Pa.1989); *see also Piambino v. Bailey,* 610 F.2d 1306 (5th Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980).

Indeed, the Court must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002) ("We and other courts have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries.").

Where, as here, a class has not yet been certified, the Court's already heightened standard must climb even higher, necessitating "a more careful scrutiny of the fairness of the settlement." *Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 834 F.2d 677, 681-82 (7th Cir. 1987) (citing *Simer v. Rios*, 661 F.2d 655, 664–66 (7th Cir.1981)), *accord In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class

2

certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement."); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. . . . No circuit has held to the contrary."); *see Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002) (when reviewing settlements proposed prior to class certification, courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions.").

A settlement that releases the claims of class members for lack of value exchanged is inherently unreasonable, unfair and inadequate. *See Reynolds v. Beneficial Natl. Bank*, 288 F.3d 277, 282-284 (7th Cir. 2002). Thus, trial courts must be "assured that the settlement represents adequate compensation for the release of the class claims." *Sullivan v. DV Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2010), *cert. denied sub nom.*, *Murray v. Sullivan*, 132 S. Ct. 1876 (2012).

## III.    The Proposed Settlement is Fundamentally Unreasonable and Inadequate as it Requires a Sweeping Release of Claims Against Navistar Yet Fails to Provide Any Compensation to Class Members for Lost Resale Value Damages

As proposed, the settlement would significantly disadvantage all class members who suffered their most severe losses in the diminished market value of Subject Vehicles.

When "major causes of action or types of relief sought in the complaint have been omitted by the settlement," courts will reject a settlement for lack of fairness. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (citing Manual for Complex Lit. § 30.42 (3d ed. 1995)), *see also Parker v. Time Warner Entm't Co., L.P.*, 239 F.R.D. 318, 336 (E.D.N.Y. 2007); Ann. Manual Complex Lit. § 21.62 (4th ed. 2019). A settlement provides fair relief if it is "specifically tailored to remedy the harms

3

identified in the compliant." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 542 (D.N.J. 1997), *aff'd sub nom. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998).

A. **Although Class Counsel and Plaintiffs Repeatedly Emphasize the Lost Resale Value of Class Vehicles and the Resulting Damages, None of the Proposed Compensation Options Includes Lost Resale Value**

During the course of the Class proceedings, Class Counsel repeatedly emphasized lost resale value as a critical component of damages, and yet in the settlement the parties did nothing to address this major category of damages. The Class Complaint alleges, for instance, that "the Trucks equipped with these Engines…have a significantly diminished value on the resale market compared with competitors' trucks with similar mileage and are very difficult to sell." 3rd Am. Compl., at ¶ 430, May 30, 2019 (ECF 637). In fact, each Named Plaintiff alleges that it suffered damages "because a defective Truck cannot be sold for the same price as a comparable non-defective truck." *Id.* at ¶ ¶ 21(b), 47(b) 57(b), 66(b), 76(b), 87(b), 97(b), 105(b), 118(b), 128(b), 138(b), 148(b), 157(b), 167(b), 181(b), 191(b), 201(b), 220(b), 230(b), 240(b), 249(b), 259(b), 269(b), 278(b), 288(b), 302(b), 312(b), 324(b), 337(b), 347(b).

Indeed, Plaintiffs allege that Navistar "continued to sell the Engines and omitted to disclose to buyers that resale market demand for vehicles equipped with those Engines would be weak." *Id.* at ¶ 428. Plaintiffs further lament that they are "stuck" with a "greatly diminished market for resale or trade-in of the used Trucks." *Id.* at ¶ 430. And yet, the proposed Settlement contains no option for class members to recoup *any* lost resale value, even as a compromised form or amount of damages.

In the settlement filings themselves, Class Counsel again emphasized the importance of lost value damages. Plaintiffs' own expert, Dr. Rossi, estimates the lost resale value "due to the

reduction in market value for the class trucks caused by the alleged engine defects" at $9,354 per truck. Tangren Declaration at 7, June, 5 2019 (ECF 641-8). For Objectors, who together have over 280 Class Vehicles for which they bear the loss at resale, lost value damages alone – based on Plaintiffs' own expert estimate – exceed $2.6 million. Actual lost value damages may be significantly higher.

Objectors retained Richard Lolmaugh, a certified equipment appraiser, to assist the Court with an estimate of the lost resale value for Class Vehicles. Based on his expert appraisal of 430 Class Vehicles, from nine separate fleets, in multiple states, and across a two year timeframe, Mr. Lolmaugh estimates that the lost resale value of Class Vehicles averaged $34,473 per truck. (Lolmaugh Affidavit at Exhibit 5) In other words, but for accelerated depreciation due to market awareness of the defective engines, Class Vehicles would have sold for an average of $34,473 *more* per truck. These are not insignificant damages that can fairly or reasonably be excluded in their entirety from a fair settlement.

Objectors also retained Ned Barnes, Managing Director with the Berkeley Research Group ("BRG"), a financial and economics consulting firm, with more than 25 years of experience as a forensic accountant, to examine the lost resale value of Class Vehicles in the marketplace. Mr. Barnes' analysis relied on the J.D. Power Valuation Services, formerly the National Automobile Dealers Association ("NADA") Used Car Guide, valuation database, which contains vehicle values collected from actual used vehicle transactions and dealership data nationwide. (Barnes Affidavit at Exhibit 6) Using this database, Mr. Barnes collected NADA resale values for a sample of 692 Class Vehicles and a comparator sample of 694 model-year 2011-2014 similarly sized, Class 8 vehicles equipped with engines manufactured by other manufacturers. *Id.* Based on actual used vehicle values reported by the NADA, Mr. Barnes

estimates that the incremental decline in value of Class Vehicles as compared to similarly sized trucks without an Advanced EGR engine is approximately $23,878 per truck without adjusting for mileage, and $26,616 per truck with mileage adjustment. *Id.*

Furthermore, lost resale value is not just incurred by Class Vehicle purchasers/owners. Those class members who leased Class Vehicles under TRAC (Terminal Rental Adjustment Clause) leases – widely used in the commercial truck industry – bear any shortfall in the amount realized by the lessor upon resale. Unlike FMV (Fair Market Value) leases in which the lessor absorbs decreased value in the resale of vehicles at the end of the lease term, TRAC lessees must cover any shortfall at resale between the projected value at the outset of the lease and the actual value at the end. In other words, TRAC lessees incur the same lost resale value damages for Class Vehicles as do owners.

While Class Counsel maintains that "the value available to Class Members through this Settlement compares favorably to how Plaintiffs' damages experts valued these claims," that favorable comparison is in name only. Memorandum In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Expenses And For Class Representative Service Awards, at 18, Sept. 10, 2019 (ECF 669). In reality, the lost resale value that Plaintiffs' own expert valued at nearly $10,000 per truck – and other experts have estimated at approximately $23,000-$34,000 per truck – has inexplicably been excluded from *all* compensation options in the Settlement.

### 1. The Cash Option Is Inadequate and Not Even Intended to Compensate for Lost Resale Value Damages

The Cash Option, capped at $2,500 per truck, offers an average payment of $32 per month of ownership or lease of a Class Vehicle. Settlement Agmt. at 18. A class member who, for example, owned a Class Vehicle for 5 years, would receive $1,920 under this option – a mere 20% of Plaintiffs' own estimated per truck lost resale value, not including additional damages

6

incurred as a result of breakdowns and repairs. The Cash Option is even more paltry for indirect lessee class members, who must share half of the Cash Option compensation with their lessor irrespective of lease terms. *Id.* at 20. So, for example, an indirect lessee who leased a Class Vehicle for 5 years would receive only $960 regardless of their lost resale value damages.

Not surprisingly, Plaintiffs concede that the Cash Option is not meant to compensate for lost resale value. Plaintiffs instead characterize the option as "fixed damages based on benefit-of-the-bargain." *See* Plts' Supp. Stmt. at 10, June 5, 2019 (ECF 641). In fact, Plaintiffs' Complaint distinguishes such damages – *i.e.* "[p]ayment of a higher price at the point of purchase or lease than would have prevailed in the market had the true nature of the Trucks been known" – from lost resale damages in each of the damages statements cited in Section III.A above. *See, e.g.*, 3rd Am. Compl., at ¶¶ 21, 47. In other words, the class Complaint sought relief for *both* benefit-of-the-bargain *and* lost resale value, yet the Cash Option compensates only for the former.

> ### 2. The Rebate Option Provides In-Kind Compensation of Substantially Less Value Than Cash, with Significant Restrictions That Further Reduce its Adequacy

The Rebate Option offers a discount off of new Navistar truck purchases based on the duration of Class Vehicle ownership or lease at an average of $128 per month. Class members who, for example, owned a Class Vehicle for 5 years would receive an average rebate of $7,680 toward the purchase of a new Navistar Class 8 heavy duty truck. Not only is this "compensation" substantially less than Plaintiffs' estimate of lost resale value, but it comes with significant restrictions that further reduce its adequacy.

First, the Rebate Option is limited to 10 rebates per class member, regardless of fleet size. Settlement Agmt. at 18. Objectors, for example, with an average fleet size of 72 Class Vehicles,

could select the Rebate Option for only a fraction of their claimed vehicles, the remainder of

which would be limited to the paltry Cash Option or the Prove-Up Option that expressly

excludes lost resale value damages.  Second, the rebates are good for only 18 months from

receipt, which presumes that all class members can afford to refresh their fleet of heavy duty

trucks within a year and a half, at an average approximate cost of more than $100,000 for a new

Navistar Class 8 heavy duty truck.  Third, the Rebate Option is only an option for those class

members who *purchase* trucks, inherently excluding those class members who exclusively lease

vehicles.  Finally, the Rebate Option is no option at all for those class members who have no

desire to purchase further Navistar vehicles after suffering substantial losses due to Defendants'

defective engines and fraudulent concealment.

   More fundamentally, though, the Rebate Option is of substantially less value as

"compensation in kind is worth less than cash of the same nominal value."  *Synfuel Techs., Inc.*

*v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006).  As the Seventh Circuit has

noted, "coupon settlements have been criticized because '(1) it is doubtful that they provide

meaningful compensation to most class members; (2) they often fail to disgorge ill-gotten gains

from the defendant; and (3) they may force class members to do future business with the

defendant.'"  *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *9 (N.D.

Ill. Aug. 26, 2013), *aff'd as modified*, 799 F.3d 701 (7th Cir. 2015) (quoting *Synfuel Techs.*, 463

F.3d at 653).  Moreover, partial discounts on high cost goods – like $100,000 new Navistar

heavy duty trucks – may be "little more than a sales promotion…a tremendous sales bonanza"

for settling defendants, as class members may feel "beholden to use the [discount]."  *In re Gen.*

*Motors Corp.*, 55 F.3d at 808, 818 (overturning trial court approval of class settlement where,

"the fact that the coupon settlement benefits certain groups of the class more than others suggests

that the district court did not adequately discharge its duties to safeguard the interests of the absentees.").

### 3. The Prove-Up Compensation Option Expressly Excludes Lost Resale Value Damages

The Prove-Up Option would seem to provide a fitting avenue for class members to prove their lost resale value damages, up to $15,000, but this option is limited to damages associated with certain failure events.  Settlement Agmt. at 8-9, 19.  Plaintiffs defend the exclusion of lost resale value from the Prove-Up Option by arguing that such damages would require "convincing a jury that Class Members' loss of resale value was impacted by the alleged defect far more than any issues about individual negotiating." Mem. Supp. Plaintiffs' Mo. for Prelim. Approval, at 14, May 29, 2019 (ECF 632).  Yet the proposed Settlement compensates failure event damages, which would presumably require convincing a jury that the failures and associated costs were due to the engine defect and not individual maintenance, driving, or other conditions.

Lost resale value for Class Vehicles has been documented in the industry based on market awareness of the engine defect, entirely independent of "individual negotiating" savvy at resale.  *See, e.g.*, Multiple issues of *Commercial Truck Guide – Industry Update*, National Automobile Dealers Association and *Industry Update*, Used Truck Association cited in Exhibit 5. Lost resale value for Class Vehicles has also been recognized in direct actions against Navistar and acknowledged by Plaintiffs and Class Counsel.  Tangren Declaration at 7, *see also, e.g.*, Trial Transcript, *Milan Supply Chain Solutions v. Navistar*, C-14-285, at 2857 (Tenn. Cir. Ct. August 10, 2017) (awarding $8,236,109 for "diminished value" damages).  Excluding lost value damages from the Prove-Up Option is clear evidence that the proposed Settlement provides inadequate consideration in exchange for the release of class members' claims.  Accordingly, the proposed Settlement, as written, fails to meet the standards required for judicial approval.

9

Objectors urge the Court to require that the parties redefine the Prove-Up Option to include documented lost resale value damages – within the $15,000 maximum recovery per truck under this option – thereby fairly allowing class members to recoup lost resale damages while not increasing the per truck Prove-Up compensation cap negotiated by the parties.

**B.    The Proposed Settlement Unfairly Treats Class Members Unequally, Favoring Those Best Represented by Named Plaintiffs**

The proposed Settlement is also unfair as it provides lesser compensation to certain sub-classes: large fleet owners, indirect TRAC lessees, and those who lease vehicles rather than purchase.

"One sign that a settlement may not be fair is that some segments of the class are treated differently from others."  *In re Gen. Motors Corp.*, 55 F.3d at 808; *accord Piambino v. Bailey*, 610 F.2d 1306, 1329 (5th Cir. 1980) (rejecting class action settlement due to "the failure to assess the interests of the two categories of plaintiffs and whether the settlement was fair, adequate and reasonable As [sic] to each"); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010) ("Courts generally are wary of settlement agreements where some class members are treated differently than others."); 7B Fed. Prac. & Proc. Civ. § 1797.1 (3d ed. 2019) ("Finally, the court must consider whether the proposal treats class members equitably relative to each other.").

The Court is obliged to assess "whether the named plaintiffs' interests are sufficiently aligned with the absentees."  *In re Gen. Motors Corp.*, 55 F.3d at 800.  A fair settlement must not subjugate the interests of one group of class members to benefit other groups.  *Piambino*, 610 F.2d at 1330 (criticizing a settlement that placed one subgroup in a worse position than they would have been if they hadn't been included in the class).  Differential treatment need not be explicit: "the fact that the coupon settlement benefits certain groups of the class more than others

suggests that the district court did not adequately discharge its duties to safeguard the interests of the absentees." *In re Gen. Motors Corp.*, 55 F.3d at 808. When a settlement "arguably affords the least relief to those class members with the most valuable claims," it does not "treat all members of the class equitably." *Id.* at 818.

In two of the three compensation options, different groups of class members are afforded unequal compensation. The Cash Option, as noted above, doubly punishes indirect TRAC lessees by failing to compensate for any lost resale value and restricting them to 50% compensation, despite bearing 100% of the damages from lost resale value; in turn, it provides a windfall to indirect TRAC lessors who bear no loss at resale yet receive 50% of the Cash Option compensation under the current settlement terms. The Rebate Option prevents large fleet owners – those with more than 10 Class Vehicles – from obtaining rebates for all of their affected vehicles and is no option for class members who lease vehicles.

In both cases, Named Plaintiffs disproportionately populate the groups that receive greater compensation under these options – Named Plaintiffs are overwhelmingly purchasers, not lessees, and own far fewer trucks than absent class members like Objectors. Only 2 of 31 Named Plaintiffs leased Class Vehicles, and 87% of Named Plaintiffs owned 10 or fewer Class Vehicles (3rd Am. Compl., at ¶¶ 223)). Class Counsel may have failed to appreciate the disparate treatment of absent large fleet owners and lessees, particularly indirect TRAC lessees, but the Court as the fiduciary for *all* class members must address this disparity and should not approve the differential treatment that would result from the proposed settlement. *See Reynolds*, 288 F.3d at 279.

## IV.     CONCLUSION

For the foregoing reasons, Objectors object to the proposed Settlement and respectfully request that the Court instruct the parties to include lost resale value as a Covered Cost under the Prove-up Option for compensation.  Without the inclusion of lost resale value, class members must surrender their most valuable claims for relief without any corresponding compensation, while unfairly further under-compensating different groups within the class not well represented by Named Plaintiffs.  Accordingly, the Settlement as currently written is fundamentally inadequate, unreasonable, and unfair.

Respectfully submitted,

By: s/ *H. Patrick Morris*

H. Patrick Morris, Bar Number:  6187083
David F. Fanning, Bar Number:  6274895
Johnson & Bell, Ltd.
33 West Monroe Street, Suite 2700
Chicago, IL 60603
Telephone:  (312) 984-0244
Fax:  (312) 372-9818
E-mail:  morrisp@jbltd.com
E-mail:  fanning@jbltd.com

William L. Anderson (admitted *pro hac vice*)
Emma K Burton (admitted *pro hac vice*)
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Telephone: (202) 624-2500
Fax: (202) 628-5116
E-mail: wanderson@crowell.com
E-mail: eburton@crowell.com

*Attorneys for Objectors*

12

# Exhibit 1

Pursuant to the Court's Pretrial Order No. 29, Ferguson Enterprises, LLC, The Walt

Disney Company, Southern California Edison Co., and US Foods, Inc. ("Objectors") provide the

following company contact information:

Ferguson Enterprises, LLC
12500 Jefferson Ave
Newport News, VA 23602
(757) 874-7795

The Walt Disney Company
500 S. Buena Vista St.
Burbank, CA 91521
(818) 560-1000

Southern California Edison Co.
2244 Walnut Grove Avenue
Rosemead, CA 91770
(626) 302-1212

US Foods, Inc.
9399 W. Higgins Road
Suite 100
Rosemont, IL 60018
(847) 720-8000

# Exhibit 2

Pursuant to the Court's Pretrial Order No. 29, Objectors provide the following schedules of Class Vehicles owned or leased by each company:

| Ferguson Enterprises LLC | | | | |
|---|---|---|---|---|
| VIN | Owned or Leased | Model Year | Make | Model |
| 1HSHXSH5RDJ329071 | TRAC Leased | 2013 | INTERNATIONAL | 8000 |
| 1HSHXSHR7BJ421599 | TRAC Leased | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR2BJ401285 | TRAC Leased | 2011 | INTERNATIONAL | 8000 |
| 1HTGSSHR0BJ389231 | TRAC Leased | 2011 | INTERNATIONAL | 7000 |
| 1HSHXSJR8BJ367157 | TRAC Leased | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR9BJ420612 | TRAC Leased | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR5BJ383378 | TRAC Leased | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR6BJ367156 | TRAC Leased | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR9CJ536149 | TRAC Leased | 2012 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSJR5CJ536150 | TRAC Leased | 2012 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSJR7CJ536148 | TRAC Leased | 2012 | INTERNATIONAL | 8600 TranStar |
| 1HTGSSHR9BJ383878 | TRAC Leased | 2011 | INTERNATIONAL | 7600 |
| 1HTGSSHR7BJ440353 | TRAC Leased | 2011 | INTERNATIONAL | 7600 |
| 1HSHXSJR3BJ450611 | TRAC Leased | 2011 | INTERNATIONAL | 8600 |
| 1HSDJSJR1BJ421656 | TRAC Leased | 2011 | INTERNATIONAL | Prostar |
| 1HSHXSJRXCJ536144 | TRAC Leased | 2012 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSJR4BJ450620 | TRAC Leased | 2011 | INTERNATIONAL | 8600 |
| 1HTGSSHRXCJ599241 | TRAC Leased | 2012 | INTERNATIONAL | 7600 WorkStar |
| 1HSHXSHR9CJ558593 | TRAC Leased | 2012 | INTERNATIONAL | 8600 ProStar |
| 1HTGSSHR6CJ603446 | TRAC Leased | 2012 | INTERNATIONAL | 7600 WorkStar |
| 1HTGSSHT5CJ647725 | TRAC Leased | 2012 | INTERNATIONAL | 7600 WorkStar |
| 1HSHXSHR0CJ044194 | TRAC Leased | 2012 | INTERNATIONAL | 8600 ProStar |
| 1HSHXSHR5CJ699418 | TRAC Leased | 2012 | INTERNATIONAL | 8600 ProStar |
| 1HSHXSHR5CJ044191 | TRAC Leased | 2012 | INTERNATIONAL | 8600 ProStar |
| 1HSHWSJN7CJ616839 | TRAC Leased | 2012 | INTERNATIONAL | 8600 TranStar |
| 1HSDJSJR3CJ089088 | TRAC Leased | 2012 | INTERNATIONAL | 8600 ProStar |
| 1HTGSSHR1CJ044193 | TRAC Leased | 2012 | INTERNATIONAL | 7600 WorkStar |
| 1HSHXSHR4CJ094113 | TRAC Leased | 2012 | INTERNATIONAL | 8600 ProStar |
| 1HTGSSHR0CJ049773 | TRAC Leased | 2012 | INTERNATIONAL | 7600 WorkStar |
| 1HSHXSHR6DH196957 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR6DH196960 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR8DH196958 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR8DH196961 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |

| Ferguson Enterprises LLC | | | | |
|---|---|---|---|---|
| VIN | Owned or Leased | Model Year | Make | Model |
| 1HSHXSHRXDH196959 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HTGSSHR1DJ187646 | TRAC Leased | 2013 | INTERNATIONAL | 7600 WorkStar |
| 1HSHXSJR8CJ118939 | TRAC Leased | 2012 | INTERNATIONAL | 8600 TranStar |
| 1HTGSSHR3DJ160576 | TRAC Leased | 2013 | INTERNATIONAL | 7600 WorkStar |
| 1HTGSSHR9DJ238195 | TRAC Leased | 2013 | INTERNATIONAL | 7600 WorkStar |
| 1HSHXSJR0DH286101 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSJR9DH286100 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSJR0CJ118935 | TRAC Leased | 2012 | INTERNATIONAL | 8600 TranStar |
| 1HSDJSJR0DJ302189 | TRAC Leased | 2013 | INTERNATIONAL | 8600 ProStar |
| 1HSHXSHR1DH300075 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HTGSSJT7CJ662964 | TRAC Leased | 2012 | INTERNATIONAL | 7600 WorkStar |
| 1HSHXSHR9DJ339781 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HTGSSHR8DJ307846 | TRAC Leased | 2013 | INTERNATIONAL | 7600 WorkStar |
| 1HTGSSHRXDJ307847 | TRAC Leased | 2013 | INTERNATIONAL | 7600 WorkStar |
| 1HSHXSHR1DJ332386 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR5DJ329071 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR0DJ339782 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR3DJ331935 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR6DJ329693 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR4DJ329692 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR4DJ332396 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR6DH414993 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR9DJ455515 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR0DJ431488 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR0DJ365136 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSHR6DJ432452 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HTGSSHRXDJ455514 | TRAC Leased | 2013 | INTERNATIONAL | 7600 WorkStar |
| 1HSHXSHR8DJ432453 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HSHXSJR4EH781984 | TRAC Leased | 2014 | INTERNATIONAL | 8600 ProStar |
| 1HSHXSJR6EH034824 | TRAC Leased | 2014 | INTERNATIONAL | 8600 ProStar |
| 1HSHXSJR6EH781985 | TRAC Leased | 2014 | INTERNATIONAL | 8600 ProStar |
| 1HTGSSHR8BJ389235 | TRAC Leased | 2011 | INTERNATIONAL | 7600 |
| 1HTGSSHT5BJ399555 | TRAC Leased | 2011 | INTERNATIONAL | 7600 |
| 1HTGSSHR5BJ445289 | TRAC Leased | 2011 | INTERNATIONAL | 7600 |
| 1HTGSSHR6BJ421602 | TRAC Leased | 2011 | INTERNATIONAL | 7600 |
| 1HTGSSHR9CJ551455 | TRAC Leased | 2012 | INTERNATIONAL | 7600 WorkStar |
| 1HTGSSHT3DJ198319 | TRAC Leased | 2013 | INTERNATIONAL | 7600 WorkStar |

| Ferguson Enterprises LLC | | | | |
|---|---|---|---|---|
| VIN | Owned or Leased | Model Year | Make | Model |
| 1HSHXSHR6DJ332397 | TRAC Leased | 2013 | INTERNATIONAL | 8600 TranStar |
| 1HTGSSJR3EJ756931 | TRAC Leased | 2014 | INTERNATIONAL | 7600 WorkStar |

| The Walt Disney Company | | | | |
|---|---|---|---|---|
| VIN | Owned or Leased | Model Year | Make | Model |
| 1HSHWSJN3DJ294069 | Owned | 2013 | International | 8600 |
| 1HSHWSJN2DJ332147 | Owned | 2013 | International | 8600 |
| 1HSHWSJN4DJ332148 | Owned | 2013 | International | 8600 |
| 1HSHWSJN6DJ332149 | Owned | 2013 | International | 8600 |
| 1HSHXSJR0DJ332146 | Owned | 2013 | International | 8600 |
| 1HSHWSJN0EH015900 | Owned | 2013 | International | 8600 |
| 1HSHWSJN8EH015899 | Owned | 2014 | International | 8600 |
| 1HSHWSJN1EH001200 | Owned | 2014 | International | 8600 |
| 1HSHWSJN7DJ332709 | Owned | 2013 | International | 8600 |
| 1HSHWSJN9EH015894 | Owned | 2014 | International | 8600 |
| 1HSHWSJN3EH001201 | Owned | 2014 | International | 8600 |
| 1HSHXSJR7EH015893 | Owned | 2014 | International | 8600 |
| 1HSHWSJN0EH015895 | Owned | 2014 | International | 8600 |
| 1HSHWSJN5EH001202 | Owned | 2014 | International | 8600 |
| 1HSHWSJN6DJ160978 | Owned | 2012 | International | TRACTOR |
| 1HSHWSJN1DJ294068 | Owned | 2013 | International | TRACTOR |
| 1HSHWSJN8DJ296965 | Owned | 2013 | International | TRACTOR |
| 1HSHWSJN0DJ160975 | Owned | 2012 | International | TRACTOR |
| 1HSHWSJNXDJ295395 | Owned | 2013 | International | TRACTOR |
| 1HSHWSJNXDJ294070 | Owned | 2013 | International | TRACTOR |
| 1HSHWSJN4DJ160977 | Owned | 2012 | International | TRACTOR |
| 1HSHXSJR7DJ160973 | Owned | 2012 | International | TRACTOR |
| 1HSHXSJR3DJ160971 | Owned | 2012 | International | TRACTOR |

| Southern California Edison Co. | | | | |
|---|---|---|---|---|
| VIN | Owned or Leased | Model Year | Make | Model |
| 1HTGSSJT9BJ420966 | TRAC Leased | 2011 | International | 7600 |
| 1HTGSSHT3DJ222814 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT9DJ222798 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSJT9CJ421651 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT2BJ420968 | TRAC Leased | 2011 | International | 7600 |
| 1HTGSSJT2BJ420971 | TRAC Leased | 2011 | International | 7600 |
| 1HTGSSJT0BJ420967 | TRAC Leased | 2011 | International | 7600 |
| 1HTGSSJT9CJ421648 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT7BJ420965 | TRAC Leased | 2011 | International | 7600 |
| 1HTGSSJT6BJ328052 | TRAC Leased | 2011 | International | 7600 |
| 1HTGSSJT4BJ328051 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT3BJ382221 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT7BJ382223 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT1BJ382217 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJTXBJ382216 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT4BJ382213 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT5BJ382219 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT0BJ382211 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT8BJ382215 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT3BJ382218 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT1BJ382220 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT6BJ382214 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT5BJ382222 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT2BJ382212 | TRAC Leased | 2011 | International | 7600 |
| 1HTRZSJT9BJ382224 | TRAC Leased | 2011 | International | 7600 |
| 1HTGSSJT9CJ606508 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSHT6CJ377856 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSHT5CJ078679 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSHT1CJ078680 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT4CJ421654 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT8CJ421642 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT2CJ421653 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT0CJ421649 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT7CJ421650 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT7CJ421647 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT3CJ421645 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT5CJ421646 | TRAC Leased | 2012 | International | 7600 |

| Southern California Edison Co. | | | | |
|---|---|---|---|---|
| VIN | Owned or Leased | Model Year | Make | Model |
| 1HTGSSJT0CJ421652 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT6CJ421655 | TRAC Leased | 2012 | International | 7600 |
| 1HTGSSJT5EJ754268 | TRAC Leased | 2014 | International | 7600 |
| 1HTGSSJT7EJ754269 | TRAC Leased | 2014 | International | 7600 |
| 1HTGSSJT3EJ754270 | TRAC Leased | 2014 | International | 7600 |
| 1HTGSSJT7EJ754272 | TRAC Leased | 2014 | International | 7600 |
| 1HTGSSJT9EJ754273 | TRAC Leased | 2014 | International | 7600 |
| 1HTGRSJR4DJ237929 | TRAC Leased | 2013 | International | 7600 |
| 1HTRZSJT7DJ632207 | TRAC Leased | 2013 | International | 7600 |
| 1HTRZSJT5DJ632206 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHTXDJ222809 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT8DJ222811 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT5DJ222877 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT8DJ222873 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT7DJ222878 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT4DJ222871 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT0DJ222818 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHTXDJ222812 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT8DJ222808 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT9DJ222879 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT6DJ222872 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHTXDJ222874 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT5DJ222801 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT1DJ222875 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT6DJ222810 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT0DJ222799 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT5DJ222815 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT7DJ222802 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT3DJ222800 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT5DJ222880 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSJTXCJ421643 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT7DJ222816 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSHT9DJ222817 | TRAC Leased | 2013 | International | 7600 |
| 1HTGSSJT5EJ754271 | TRAC Leased | 2013 | International | 7600 |

| US Foods Inc. | | | | |
|---|---|---|---|---|
| VIN | Owned or Leased | Model Year | Make | Model |
| 1HSHXSJRXBJ327632 | Owned | 2011 | International | 8600 |
| 1HSHXSJRXBJ327629 | Owned | 2011 | International | 8600 |
| 1HSHXSJRXBJ327601 | Owned | 2011 | International | 8600 |
| 1HSHXSJRXBJ327596 | Owned | 2011 | International | 8600 |
| 1HSHXSJRXBJ327565 | Owned | 2011 | International | 8600 |
| 1HSHXSJRXBJ327534 | Owned | 2011 | International | 8600 |
| 1HSHXSJRXBJ327520 | Owned | 2011 | International | 8600 |
| 1HSHXSJRXBJ327517 | Owned | 2011 | International | 8600 |
| 1HSHXSJRXBJ327503 | Owned | 2011 | International | 8600 |
| 1HSHXSJRXBJ327498 | Owned | 2011 | International | 8600 |
| 1HSHXSJR9BJ327816 | Owned | 2011 | International | 8600 |
| 1HSHXSJR9BJ327590 | Owned | 2011 | International | 8600 |
| 1HSHXSJR9BJ327587 | Owned | 2011 | International | 8600 |
| 1HSHXSJR9BJ327542 | Owned | 2011 | International | 8600 |
| 1HSHXSJR9BJ327539 | Owned | 2011 | International | 8600 |
| 1HSHXSJR9BJ327525 | Owned | 2011 | International | 8600 |
| 1HSHXSJR9BJ327511 | Owned | 2011 | International | 8600 |
| 1HSHXSJR9BJ327508 | Owned | 2011 | International | 8600 |
| 1HSHXSJR8BJ327662 | Owned | 2011 | International | 8600 |
| 1HSHXSJR8BJ327659 | Owned | 2011 | International | 8600 |
| 1HSHXSJR8BJ327645 | Owned | 2011 | International | 8600 |
| 1HSHXSJR8BJ327631 | Owned | 2011 | International | 8600 |
| 1HSHXSJR8BJ327595 | Owned | 2011 | International | 8600 |
| 1HSHXSJR8BJ327533 | Owned | 2011 | International | 8600 |
| 1HSHXSJR8BJ327516 | Owned | 2011 | International | 8600 |
| 1HSHXSJR8BJ327502 | Owned | 2011 | International | 8600 |
| 1HSHXSJR8BJ327497 | Owned | 2011 | International | 8600 |
| 1HSHXSJR7BJ327815 | Owned | 2011 | International | 8600 |
| 1HSHXSJR7BJ327605 | Owned | 2011 | International | 8600 |
| 1HSHXSJR7BJ327586 | Owned | 2011 | International | 8600 |
| 1HSHXSJR7BJ327569 | Owned | 2011 | International | 8600 |
| 1HSHXSJR7BJ327541 | Owned | 2011 | International | 8600 |
| 1HSHXSJR7BJ327538 | Owned | 2011 | International | 8600 |
| 1HSHXSJR7BJ327524 | Owned | 2011 | International | 8600 |
| 1HSHXSJR7BJ327510 | Owned | 2011 | International | 8600 |
| 1HSHXSJR7BJ327507 | Owned | 2011 | International | 8600 |
| 1HSHXSJR6BJ327661 | Owned | 2011 | International | 8600 |

| US Foods Inc. | | | | |
|---|---|---|---|---|
| VIN | Owned or Leased | Model Year | Make | Model |
| 1HSHXSJR6BJ327658 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR6BJ327644 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR6BJ327630 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR6BJ327594 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR6BJ327563 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR6BJ327546 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR6BJ327532 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR6BJ327529 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR6BJ327515 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR6BJ327501 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR6BJ327496 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR5BJ327604 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR5BJ327571 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR5BJ327568 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR5BJ327540 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR5BJ327537 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR5BJ327523 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR5BJ327506 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR4BJ327786 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR4BJ327660 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR4BJ327657 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR4BJ327643 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR4BJ327562 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR4BJ327545 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR4BJ327531 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR4BJ327528 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR4BJ327514 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR4BJ327500 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR3BJ327648 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR3BJ327603 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR3BJ327570 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR3BJ327567 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR3BJ327536 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR3BJ327522 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR3BJ327519 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR3BJ327505 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR2BJ327785 | Owned | 2011 | INTERNATIONAL | 8600 |

| US Foods Inc. | | | | |
|---|---|---|---|---|
| VIN | Owned or Leased | Model Year | Make | Model |
| 1HSHXSJR2BJ327656 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR2BJ327642 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR2BJ327611 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR2BJ327589 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR2BJ327561 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR2BJ327544 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR2BJ327530 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR2BJ327527 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR2BJ327513 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR1BJ327602 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR1BJ327597 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR1BJ327566 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR1BJ327535 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR1BJ327521 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR1BJ327518 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR1BJ327504 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR1BJ327499 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR0BJ327784 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR0BJ327655 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR0BJ327610 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR0BJ327591 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR0BJ327588 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR0BJ327543 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR0BJ327526 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR0BJ327512 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSHXSJR0BJ327509 | Owned | 2011 | INTERNATIONAL | 8600 |
| 1HSCUSJR6BJ365488 | Leased | 2011 | INTERNATIONAL | PROSTAR |
| 3HSDJSJR1CN620513 | Leased | 2012 | INTERNATIONAL | PROSTAR |
| 1HSHWSHN9CJ685411 | Leased | 2012 | INTERNATIONAL | TRANSTAR 8600 |
| 1HSHWSHN9CJ621918 | Leased | 2012 | INTERNATIONAL | TRANSTAR 8600 |
| 1HSHWSHN7CJ692437 | Leased | 2012 | INTERNATIONAL | TRANSTAR 8600 |
| 1HSHWSHN0CJ685412 | Leased | 2012 | INTERNATIONAL | TRANSTAR 8600 |
| 1HSHXSJR0BJ327784 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR1BJ327597 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR2BJ327589 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR2BJ327642 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR2BJ327785 | Owned | 2011 | INTERNATIONAL | 8000 |

| US Foods Inc. | | | | |
|---|---|---|---|---|
| VIN | Owned or Leased | Model Year | Make | Model |
| 1HSHXSJR4BJ327643 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR4BJ327786 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR6BJ327594 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR6BJ327644 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR7BJ327815 | Owned | 2011 | INTERNATIONAL | TRANSTAR 8600 |
| 1HSHXSJR8BJ327497 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR8BJ327595 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR8BJ327631 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR9BJ327590 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJR9BJ327816 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJRXBJ327596 | Owned | 2011 | INTERNATIONAL | 8000 |
| 1HSHXSJRXBJ327632 | Owned | 2011 | INTERNATIONAL | 8000 |

# Exhibit 3a

**Affidavit of Julie Yutesler in Support of Objection of Four Fleet Class Members to Final Approval of Proposed Class Action Settlement *In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation***

1.      I, Julie Yutesler, am employed as Deputy General Counsel and Assistant Secretary for Ferguson Enterprises, LLC and offer the following Affidavit in support of the Objection of Four Fleet Class Members to Final Approval of Proposed Class Action Settlement *In re Navistar MaxxForce Engines Marketing Sales Practices and Products Liability Litigation*.

2.      I have been employed by Ferguson Enterprises, LLC since May 2001. In my capacity as Deputy General Counsel and Assistant Secretary, I am authorized to act on behalf of the company.

3.      Ferguson Enterprises, LLC is a Class Member in *In re Navistar MaxxForce Engines Marketing Sales Practices and Products Liability Litigation* by virtue of its lease of Class Vehicles, as detailed in the vehicle schedule at Exhibit 2 to the Objection.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _9th_ day of October, 2019, at Newport News, Virginia.

Julie Yutesler
Deputy General Counsel
Assistant Secretary
Ferguson Enterprises, LLC

STATE OF VIRGINIA            )

                                         ) ss.

COUNTY OF NEWPORT NEWS    )

I HEREBY CERTIFY that on this ___9th___ day of ___October___, 2019, the above-named JULIE YUTESLER personally appeared before me and made oath in due form of law that the matters and facts set forth in the foregoing Affidavit are true and correct as therein stated and acknowledged that the said Affidavit is in fact her voluntary act and deed and that she has full understanding thereof.

AS WITNESS my hand and Notarial Seal

_____
NOTARY PUBLIC – Tammy Austin
My Commission Expires: 09/30/2021

# Exhibit 3b

**<u>Affidavit of Marea M. Suozzi in Support of Objection of Four Fleet Class Members to Final</u>**
**<u>Approval of Proposed Class Action Settlement in <i>In re Navistar MaxxForce Engines</i></u>**
**<u><i>Marketing, Sales Practices and Products Liability Litigation</i></u>**

1.      I, Marea M. Suozzi, am employed as Assistant General Counsel for The Walt Disney Company and offer the following Affidavit in support of the Objection of Four Fleet Class Members to Final Approval of Proposed Class Action Settlement in *In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation,* Case No. 1:14-cv-10318 (N.D. Ill.).

2.      I have been employed by The Walt Disney Company for 16 years. In my capacity as Assistant General Counsel, I am authorized to act on behalf of the company.

3.      The Walt Disney Company is a Class Member in *In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation* by virtue of its ownership of twenty-three (23) Class Vehicles, as detailed in the vehicle schedule at Exhibit 2 to the Objection.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____9^TH____ day of October, 2019, at Burbank, California

*Marea M. Suozzi*

Marea M. Suozzi
Assistant General Counsel
The Walt Disney Company

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California )

County of _Los Angeles_ )

On _October 9th, 2019_ before me, _Kimberly M. Huff, Notary Public_
     Date                                           Here Insert Name and Title of the Officer

personally appeared _MAREA M. SUOZZI_
                                            Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

KIMBERLY M. HUFF
Notary Public – California
Los Angeles County
Commission # 2229243
My Comm. Expires Feb 21, 2022

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                             Signature of Notary Public

---

          *Place Notary Seal Above*

---
*OPTIONAL*
---

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____ Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee        ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee        ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

---

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

# Exhibit 3c

**Affidavit of Patricia A. Cirucci in Support of Objection of Four Fleet Class Members to Final Approval of Proposed Class Action Settlement *In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation***

1.       I, Patricia A. Cirucci, am employed as Director and Managing Attorney of Commercial Litigation for Southern Consolidated Edison and offer the following Affidavit in support of the Objection of Four Fleet Class Members to Final Approval of Proposed Class Action Settlement *In re Navistar MaxxForce Engines Marketing Sales Practices and Products Liability Litigation.*

2.       I have been employed at Southern California Edison for **15** years. In my capacity as Director and Managing Attorney of Commercial Litigation, I am authorized to act on behalf of the company.

3.       Southern Consolidated Edison is a Class Member in *In re Navistar MaxxForce Engines Marketing Sales Practices and Products Liability Litigation* by virtue of its lease of seventy-one (71) Class Vehicles, as detailed in the vehicle schedule at Exhibit 2 to the Objection.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of October, 2019, at Rosemead, California.

Patricia A. Cirucci
Director and Managing Attorney
Commercial Litigation
Southern Consolidated Edison

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Los Angeles_ )

On _October 8, 2019_ before me, _ANA A. CALDERÓN, NOTARY Public,_
(insert name and title of the officer)

personally appeared _PATRICIA A. Cirucci_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Ana A. Calderón_ (Seal)

ANA A. CALDERON
Notary Public – California
Los Angeles County
Commission # 2228418
My Comm. Expires Feb 7, 2022

# Exhibit 3d

**Affidavit of Andrew Johnstone in Support of Objection of Four Fleet Class Members to Final Approval of Proposed Class Action Settlement *In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation***

1.      I, Andrew M. Johnstone, am employed as Associate General Counsel of Litigation, Employment, and Risk Management for US Foods, Inc. and offer the following Affidavit in support of the Objection of Four Fleet Class Members to Final Approval of Proposed Class Action Settlement *In re Navistar MaxxForce Engines Marketing Sales Practices and Products Liability Litigation.*

2.      I have been employed at US Foods, Inc. since July 2018. In my capacity as Associate General Counsel of Litigation, Employment, and Risk Management, I am authorized to act on behalf of the company.

3.      US Foods, Inc. is a Class Member in *In re Navistar MaxxForce Engines Marketing Sales Practices and Products Liability Litigation* by virtue of its ownership or lease of one hundred and twenty-three (123) Class Vehicles, as detailed in the vehicle schedule at Exhibit 2 to the Objection.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of October, 2019, at Rosemont, Illinois.

Andrew M. Johnstone
Associate General Counsel
Litigation, Employment, and Risk
Management
US Foods, Inc.

STATE OF ILLINOIS                   )

                                        ) ss.

COUNTY OF COOK                   )

I HEREBY CERTIFY that on this _7th_ day of _October_, 2019, the above-named ANDREW JOHNSTONE personally appeared before me and made oath in due form of law that the matters and facts set forth in the foregoing Affidavit are true and correct as therein stated and acknowledged that the said Affidavit is in fact his voluntary act and deed and that he has full understanding thereof.

AS WITNESS my hand and Notarial Seal

NOTARY PUBLIC
My Commission Expires: _03/07/22_

OFFICIAL SEAL
DEBORAH A RATTERMAN-WARNECKE
NOTARY PUBLIC - STATE OF ILLINOIS
My Commission Expires 03/07/22

# Exhibit 4

Pursuant to the Court's Pretrial Order No. 29, Objectors submit this notice that counsel

for the Objectors will appear at the Fairness Hearing currently scheduled for November 13, 2019.

# Exhibit 5

**Affidavit of Richard W. Lolmaugh in Support of Objection of Four Fleet Class Members to Approval of Proposed Class Settlement *In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation***

1.      I, Richard W. Lolmaugh, am designated as a "*Certified Senior Appraiser*" by the *Equipment Appraisers Association of North America* of which I have been a member since 2007. This certification is based upon verified industry experience, education, training and peer review by a panel of senior professional equipment appraisers. As a senior equipment appraiser, I offer the following Affidavit in support of the Objection of Four Fleet Class Members to Approval of Proposed Class Settlement *In re Navistar MaxxForce Engines Marketing Sales Practices and Products Liability Litigation.*

2.      I have more than 40 years of experience in the heavy-duty truck industry as a heavy truck owner and 23-years as a heavy equipment and truck inspector/appraiser, nine (9) years of which were spent as the Used Equipment Manager for Holt of California (Caterpillar Authorized Dealer for over 80-years).  This work included inspecting and appraising equipment for trade-in, re-build and resale.  The last 14 years I have owned and operated *R. W. Lolmaugh Appraisal Services* on a full-time basis offering inspection, appraisal and consulting services to owners, buyers, sellers, and financers of heavy-duty trucks and heavy equipment throughout the United States, including Alaska as well as Canada.

3.      As a requirement for membership in the *Equipment Appraisers Association of North America (EAANA)* and as a matter of professional continuing education I have attended hundreds of hours of appraisal-related training as well as technical and safety related training during the course of my career.

4.      I have reviewed extensive market valuation and sales information regarding Class Vehicles (MY 2011-2014 International trucks equipped with MaxxForce 11- and 13-liter

engines) and considered the potential effects of warranty and repair history for such vehicles on resale value.

5.      My opinions are based on my review of the pertinent documents, my education and training, and my own experience as a certified equipment appraiser, used equipment manager, and business owner in the heavy duty truck and appraisal industry.

6.      My opinion and the prevailing opinion in the industry is that performance and reliability problems with the MaxxForce engine installed in Class Vehicles has cast a stigma upon the trucks in the used market-place over the year that has resulted in a low level of demand for these trucks in the market place.  As a result, Class Vehicles have uncharacteristically low used sale values, significantly below comparable, used Class-8 trucks from other manufacturers, equipped with non-MaxxForce engines.

7.      Over the course of two years, I conducted desk-top appraisals of 430 individual Class Vehicles - Class-8 International/Navistar trucks model years 2011, 2012, 2013 and 2014, equipped with a MaxxForce 11- or 13-liter diesel engine. These trucks resided in nine (9) separate fleets.  The purpose of these appraisals was to determine the average estimated lost value of MaxxForce powered trucks in the resale market on different dates and in different locations. Based on my appraisals, I concluded that the estimated lost value per truck ranged from $25,194 to $45,203, with an average estimated lost value of $34,473 per truck.

8.      My findings are consistent with industry findings as reported in the National Automobile Dealers Association (NADA) Commercial Truck Guide Industry Updates, as well as the Used Truck Association (UTA) market newsletters and reports. These materials show a clear reduced value for Class Vehicles as compared to other OEM Class 8 trucks for similar comparative years.

9.      For example, UTA's May 2014 *Industry Update* newsletter reported the negative effect that the MaxxForce engine was having on values of International ProStar trucks (a Class Vehicle).  The

newsletter showed the retail average for MaxxForce powered ProStars for the month of March 2014 was no longer in line with the average industry retail price for a 4 year old sleeper tractor (roughly $75,000), but rather trailing by approximately $7,000 (at roughly $68,000) – that spread was even further widened when the ProStar values were removed from the industry average calculation (roughly $84,000 industry average vs. approximately $68,000 ProStar average, for a difference of $16,000).

10.     The negative effect of the MaxxForce engine on truck values is also evident in the *NADA Commercial Truck Guide – Industry Update*.  The Guide is an industry accepted and reliable authority pricing guide that is published monthly and provides market reports that are used and relied upon in the used truck and appraisal industries, including the Class 8 truck industry.  The NADA's July 2014 Guide reported that the average retail price of a 3-year old ProStar between January and May 2014 ranged from approximately $62,000-$69,000 (for Model Year 2011 ProStars) compared to the industry average of approximately $80,000-$85,000 during this same time period. The values NADA reported for MaxxFoce powered Prostar retail prices were running approximately 25-30% below the market average for all 3-year-old tractors.

11.     In  its August 2014 newsletter, UTA reported that the average retail price for a 3 year old ProStar truck in June 2014 had dropped substantially and that the industry average for a non-MaxxForce 3 year old truck in June 2014 was approximately $25,000 more than the ProStar, which was valued at roughly 35% below the industry average.

12.     By August 2014, as reported in the industry report *Transport Topics*, Navistar launched its "Diamond Renewed" program for MY 2010 and newer International ProStar trucks with exhaust gas recirculation technology (EGR) in response to "well-publicized difficulties" according to Tim Schick of Navistar and in order to remedy substantially declining values for the trucks in the marketplace.

13.     The NADA's Industry Guide for November 2014 Update again indicated that 3 year old MaxxForce powered ProStar retail values continued to run behind the industry average, now by roughly

25% (approximately $58,000 versus $80,000), and even more so when the ProStar value was excluded from the industry average (approximately $58,000 versus approximately $83,000 – $25,000 less).

14. The February 2015 UTA *Industry Update* newsletter again confirmed the depressed values of the MaxxForce powered ProStar by noting that the tractors "consistently performed slightly more than 25 percent below the market average for the prior year."

15. The MaxxForce powered ProStar's poor value trend continued as the February 2016 *NADA Industry Update* indicated the average retail value of a 3-5 year old ProStar continued to run nearly 40% below Market Industry average values in December 2015 ($40,000 compared to roughly $84,000), with the gap further widening to $27,500 when the ProStar values are excluded from the industry average (at $40,000 compared to $67,500). The *Update* showed the value of the ProStar falling nearly 40% over the course of 2015, compared to the industry average of roughly 18%.

16. The June 2016 newsletter from the UTA – which included the NADA's Guide sales data for April 2016 – showed that values of the ProStar trucks continued to trail substantially behind the industry average for 3-5 year old tractors, at a $25,000 difference in value. Excluding the ProStar from the industry average further widened the spread to $28,000 less for ProStar versus comparable trucks without the MaxxForce engine.

17. My expert appraisal of the accelerated depreciation of 430 Class Vehicles and repeated reports of lost value for Class Vehicles by NADA, UTA, and other leaders in the used truck industry were echoed by Navistar itself. I have reviewed the testimony of Navistar's Senior Vice President of Sales and Marketing from 2008 to 2014, James Hebe, in the *Ross Neely Systems, Inc. v. Navistar, Inc. and Navistar International Corporation* matter. Mr. Hebe testified that Navistar's perception in the truck industry affected the resale value of used MaxxForce trucks by dropping resale values "dramatically." Mr. Hebe further testified that the reputation of MaxxForce trucks in the marketplace "is what it is" and that "you can perfume the pig as much

as you want; it's not going to change it;" Mr. Hebe added that the performance and reliability of the MaxxForce was the "worst I have ever seen."

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8TH day of October, 2019, at Lincoln, California.

Richard W. Lolmaugh
R.W. Lolmaugh Appraisal Services

STATE OF CALIFORNIA            )

                                              ) ss.

COUNTY OF [INSERT]            )

I HEREBY CERTIFY that on this _____ day of _____, 2019, the above-named RICHARD W. LOLMAUGH personally appeared before me and made oath in due form of law that the matters and facts set forth in the foregoing Affidavit are true and correct as therein stated and acknowledged that the said Affidavit is in fact his voluntary act and deed and that he has full understanding thereof.

AS WITNESS my hand and Notarial Seal

See Attached For Notary Public

_____

NOTARY PUBLIC

My Commission Expires: _____

CLEAR

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT       CIVIL CODE § 1189

&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California        )

County of __Sutter__        )

On _October 8, 2019_ before me, __Mayra Rocha, Notary Public__
    *Date*               *Here Insert Name and Title of the Officer*

Personally appeared _Richard Warren Colmaugh_
                        *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**MAYRA ROCHA**
COMM. # 2293412
NOTARY PUBLIC · CALIFORNIA
SACRAMENTO COUNTY
COMM. EXPIRES JUNE 16, 2023
MGC1

Signature _Mayra Rocha_
            *Signature of Notary Public*

        *Place Notary* Seal *Above*

------------------------------------------- *OPTIONAL* -------------------------------------------
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document _Affidavit_      Document Date _____
Number of Pages _6_      Signer(s) Other Than Named Above _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name _____ | Signer's Name _____ |
|---|---|
| ☐ Corporate Officer—Title(s) _____ | ☐ Corporate Officer—Title(s) _____ |
| ☐ Partner   ☐ Limited   ☐ General | ☐ Partner   ☐ Limited   ☐ General |
| ☐ Individual   ☐ Attorney in Fact | ☐ Individual   ☐ Attorney in Fact |
| ☐ Trustee   ☐ Guardian or Conservator | ☐ Trustee   ☐ Guardian or Conservator |
| ☐ Other _____ | ☐ Other _____ |
| Signer Is Representing _____ | Signer Is Representing _____ |

&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;&#9618;
©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827) Item #5907

# Exhibit 6

**Affidavit of Ned S. Barnes in Support of the Objection of Four Fleet Class Members to Approval of Proposed Class Settlement *In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation***

1.      I, Ned S. Barnes, declare under penalty of perjury that the foregoing is true and correct.

2.      I am a Managing Director with the Berkeley Research Group ("BRG"), a financial and economics consulting firm. I am a Certified Public Accountant and a Certified Fraud Examiner, and I have over 25 years of experience as a forensic accountant.

3.      As part of my professional practice, I regularly provide consulting services to clients on issues related to the calculation of possible damages in commercial disputes. I have provided expert testimony on possible damages on more than fifteen occasions in federal and state courts, and in arbitration proceedings, including arbitral proceedings before the American Arbitration Association and the Court of Arbitration of the International Chamber of Commerce.

4.      In conducting asset and business valuations, I have utilized, where appropriate, various generally accepted valuation methodologies, including techniques associated with the income approach, the market approach, and the cost approach.

5.      In performing my work as set forth below, I relied on my academic background, professional training and experience as a CPA, a forensic accountant, and a valuation professional.

6.      I was asked to investigate the possible incremental decline in value of certain model year 2011-2014 Class 8 Navistar MaxxForce trucks equipped with Advanced EGR diesel engines (hereinafter "Class Vehicles") as compared to model year 2011-2014 similarly sized vehicles equipped with engines manufactured by other manufacturers (hereinafter "Non-MaxxForce Vehicles").

7.     To conduct this analysis, I relied on the J.D. Power Valuation Services, formerly the National Automobile Dealers Association ("NADA") Used Car Guide valuation database. This database contains vehicle values collected by NADA from automotive transactions, dealership data, and marketplace reports nationwide, as confirmed by statisticians and economists to be sound and authentic.  I understand the NADA Used Car Guide is the largest database of its kind and is regularly relied on in the automobile industry to estimate the fair market value of used vehicles.

8.     I collected NADA resale values for a sample of 692 Class Vehicles and a sample of 694 Non-MaxxForce Vehicles.  See Table 1 below.

9.     Based on these data, the average decline in value (measured as the difference between the reported original cost and the NADA adjusted wholesale price) for Class Vehicles was $90,264.03.  By contrast, the average decline in value for Non-MaxxForce Vehicles was $66,385.37.  Accordingly, this analysis indicates that Class Vehicles experienced a decline in value, on average, of 21.5% more than Non-MaxxForce Vehicles.  See Tables 1 and 2 below.

10.     This *incremental* decline in value of Class Vehicles as compared to Non-MaxxForce Vehicles is approximately $23,878.66 per truck.  See Table 2 below.

11.     The resale values of the Class Vehicles and Non-MaxxForce Vehicles in the analysis described above do not incorporate a mileage adjustment. A mileage adjustment is an increase or decrease to the dollar value of a truck determined by NADA and is generated from this database as a result of inputting a truck's actual mileage as of the valuation date. When a user inputs a truck's Vehicle Identification Number (VIN) into the valuation database, it will automatically populate certain features of the truck (model year, body type, engine type, etc.), including an estimate of mileage. NADA will then generate a dollar value adjustment if a truck's

actual mileage is higher or lower than NADA's estimated mileage. In other words, if a truck's actual mileage is higher than NADA's estimated mileage, NADA will generate a downward adjustment to decrease the value of a truck. Conversely, if a truck's actual mileage is lower than NADA's estimated mileage, NADA will generate an upward adjustment to increase the value of a truck.

12.     I conducted a similar analysis, as described in Paragraphs 8-10 above, using reported truck values that *included* this mileage adjustment and determined that the incremental decline in value of Class Vehicles as compared to Non-MaxxForce Vehicles is approximately $26,616.21 per truck, a difference of approximately 24.2%. These results indicate a greater incremental decline in value of Class Vehicles than the analysis described above, which excluded the mileage adjustment. Accordingly, excluding the mileage adjustment results in a conservative estimate of average decline in value of Class Vehicles as compared to Non-MaxxForce Vehicles.

### TABLE 1

| Truck Model Year | Class Vehicles | | | | Non-MaxxForce Vehicles | | | |
|---|---|---|---|---|---|---|---|---|
| | # of Trucks | Average Months in Service Per Truck | Average $ Decrease from Original Cost Basis to Adjusted Wholesale | Average % Decrease from Original Cost Basis to Adjusted Wholesale | # of Trucks | Average Months in Service Per Truck | Average $ Decrease from Original Cost Basis to Adjusted Wholesale | Average % Decrease from Original Cost Basis to Adjusted Wholesale |
| 2011 | 110 | 65 | $84,363.87 | 82.5% | 214 | 53 | $53,650.30 | 51.8% |
| 2012 | 108 | 53 | $83,142.34 | 81.4% | 330 | 58 | $65,603.72 | 63.8% |
| 2013 | 327 | 56 | $97,068.43 | 86.3% | 57 | 64 | $84,686.50 | 77.1% |
| 2014 | 147 | 56 | $84,775.07 | 82.4% | 93 | 59 | $87,246.52 | 74.6% |
| Total / Weighted Average | 692 | 57 | $90,264.03 | 84.1% | 694 | 57 | $66,385.37 | 62.7% |

**TABLE 2**

| Summary | Average $ Decrease from Original Cost Basis to Adjusted Wholsesale | Average % Decrease from Original Cost Basis to Adjusted Wholsesale |
|---|---|---|
| Class Vehicle | $90,264.03 | 84.1% |
| Non-MaxxForce Vehicle | $66,385.37 | 62.7% |
| Difference | $23,878.66 | 21.5% |

Executed this 9th day of October, 2019, at Washington, DC.

_____

Ned S. Barnes
Managing Director
Berkeley Research Group, LLC

DISTRICT OF COLUMBIA           ) ss.


    I HEREBY CERTIFY that on this 9th day of October, 2019, the above-named NED S. BARNES personally appeared before me and made oath in due form of law that the matters and facts set forth in the foregoing Affidavit are true and correct as therein stated and acknowledged that the said Affidavit is in fact his voluntary act and deed and that he has full understanding thereof.

    AS WITNESS my hand and Notarial Seal

Charlotte S. Brown
NOTARY PUBLIC
My Commission Expires: 7/31/2023



Page - 5 - of 5