**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation** | **Master Case No. 1:14-cv-10318**<br><br>**Judge Joan B. Gottschall** |

**OHIO LITIGANTS', DRASC, INC. AND S&C TRUCKS OF WINKLEPLECK, LTD., MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN ORDER EXCLUDING THEM FROM THE CLASS ACTION SETTLEMENT OR ALTERNATIVELY <u>ENLARGING THEIR TIME TO OPT OUT</u>**

DRASC, Inc. and S&C Trucks of Winklepleck, Ltd. (referred to collectively as "Drasc") have moved for an order under Fed.R. Civ.P. 6(b) and Fed.R. Civ.P.60(b)(1), modifying the judgment entered in connection with the Named Plaintiffs' settlement (the "Settlement") with Defendants, Navistar, Inc. ("Navistar") and Navistar International Corporation, to find that Drasc are excluded from the Settlement or, alternatively, enlarging the time for Drasc to opt out.

## INTRODUCTION

On February 7, 2020, Drasc's counsel was busily reviewing hundreds of exhibits in preparation for upcoming depositions of Navistar. These depositions were scheduled to take place at Latham & Watkins' Chicago offices on February 18 and 19. As Drasc's counsel would be traveling from Ohio to Chicago, they had booked their hotel and flights. Navistar's counsel agreed to these depositions and represented to an Ohio court the depositions would proceed. In fact, on January 25, 2020, Navistar noticed the depositions of Drasc and, on January 31, 2020, Navistar produced supplemental documents. The parties have been actively litigating claims against Navistar in the Tuscarawas County Court of Common Pleas (Ohio) for several years.

However, at 3:20 pm (EST) on Friday, February 7, 2020, Navistar's counsel emailed Drasc's counsel and shockingly declared the Ohio lawsuit was over. For the first time, Navistar informed Drasc's counsel there was a class action in this Court, Drasc was part of the class, and

Drasc had not "opted out" of the settlement. Navistar's counsel claimed the Ohio lawsuit must immediately be dismissed or otherwise Drasc would be in violation of this Court's order(s). Prior to February 7, Drasc and its counsel were unaware of any class action settlement notice.

Drasc and its counsel were gobsmacked. Drasc and Navistar have spent years litigating in the Ohio court. Over a million pages of discovery have been exchanged. Depositions have been conducted with others scheduled. Experts have been engaged and deposed. Countless hearings before the Ohio court have taken place. The parties are at the tail end of discovery, with a March 6, 2020 cutoff. Trial is set for June 2020. Drasc, a small business, has invested an incredible amount of time and expense into the Ohio lawsuit. Navistar now claims it was all for naught.

Drasc have been represented by counsel in their dispute against Navistar since 2014. Throughout that time, Navistar has filed over 155 pleadings and other filings in the Ohio lawsuit. Navistar served every one of those filings on Drasc's counsel, typically by email. Yet, no one ever served Drasc's counsel with a copy of the all-important "class action settlement notice" that Navistar now contends has the extraordinary effect of extinguishing the Ohio lawsuit.

Since August 9, 2019 (the date when notice of the class action settlement was purportedly sent to Drasc), the parties' counsel have had countless communications. Likewise, counsel has participated in multiple hearings in the Ohio court since August 9. Navistar's counsel never mentioned the class action or any settlement notice. If they had, Drasc's counsel would have immediately acted (as they are now) to ensure Drasc's ability to proceed with the Ohio lawsuit.

Instead, all parties actively proceeded with the Ohio lawsuit, both during the 'opt out' period and after. For instance, there were at least 17 filings and exchanges in the Ohio lawsuit between August 9, 2019 and October 10, 2019. Likewise, there were at least 14 filings and

exchanges in the Ohio lawsuit between October 11, 2019 and January 31, 2020. Why? Because the parties were acutely aware Drasc had no intent to participate in the Settlement.

Drasc suffered tremendous damages as a result of Navistar's conduct. The 11 Navistar trucks Drasc purchased were so incessantly defective Drasc even had to purchase a $99,000 wrecker, just to tow the persistently broken-down trucks back to the state of Ohio. In nearby Licking County, Ohio, another similarly affected Navistar customer recently obtained a jury verdict in excess of $2 Million against Navistar. Given the enormous time and expense Drasc has invested in the Ohio lawsuit, in addition to the overwhelming damages suffered by Drasc, they never would have intended to accept the Settlement. In fact, Drasc delivered a settlement demand to Navistar after the Court's preliminary approval of the Settlement that was far different from the terms of the Settlement. As such, Navistar has been fully aware Drasc had no intent to participate in the Settlement.

Drasc respectfully requests the Court exercise its broad discretion to exclude them from the Settlement. In the alternative, Drasc requests an Order enlarging the time for them to opt out.

## STATEMENT OF FACTS

On May 14, 2014, Drasc first initiated the Ohio litigation against Navistar and one of Navistar's approved truck dealers. Between May 2014 and July 2017, the parties actively litigated the case, including conducting numerous depositions and producing millions of pages of documents. On October 27 and 28 of 2016, Drasc deposed three (3) employees of Navistar. Those depositions occurred at the Chicago office of Navistar's national trial counsel, Latham & Watkins LLP. In late July 2017, Drasc voluntarily dismissed the Ohio litigation before re-filing less than a year later. Drasc has been actively litigating the re-filed claims in the Tuscarawas

County Court of Common Pleas (Ohio), captioned as DRASC, INC., et al., vs. NAVISTAR, INC., et al. and assigned Case No. 2018 CV 07 0635 (the "Ohio Lawsuit"), since July 20, 2018.

On June 12, 2019, this Court granted a preliminary approval of the Settlement and therein approved a nationwide class for settlement. [Dkt. 746 at p. 1]. Settlement notice was allegedly sent to all class members on August 9, 2019, with an opt out deadline of October 10, 2019 (the "Settlement Notice"). [*Id*.]. However, Drasc has no record showing they ever received notice of the Settlement. [Declaration of Rodney Gordon, ¶ 7]. As a result, Drasc did not analyze whether to participate in the Settlement, and Drasc did not submit a letter to the claims administrator to formally opt-out of the Settlement prior to the opt-out date. Moreover, the Settlement Notice did not advise the recipient that their independent pending litigation against Navistar would be terminated if it did not deliver a formal opt-out notice.

Drasc first learned of Navistar's contention that Drasc had not adequately opted out of the Settlement on February 7, 2020, when Navistar's counsel contacted Drasc's counsel regarding the Settlement. [Declaration of Matthew Onest, ¶ 4, Exh. A to same]. Navistar had been ordered to submit to a deposition in the Ohio Lawsuit by the end of January 2020. [*Id*. at ¶ 21(h)]. On December 2, 2019 – Judge Emmett O'Farrell, the presiding judge in the Ohio Lawsuit, held a status conference to discuss, among other items, Navistar's deposition. [*Id*. at ¶ 21(i)]. During that call, Navistar's counsel asked only that its compliance deadline be extended to the end of January 2020. [*Id*. at ¶ 22]. Counsel did not inform Judge O'Farrell or Drasc's counsel that they believed Drasc was bound by a settlement or even this litigation. Instead, Navistar agreed to new case management deadlines, including a June 2020 trial date. These are the actions of a party who knows the other party does not intend to be bound to a class action settlement.

**ARGUMENT**

A. **Drasc's actions just prior to the Settlement Notice and during the opt out period were a reasonable indication they did not want to participate in the Settlement.**

  i. *The standard for what constitutes a reasonable indication of one's intent to not participate in a class action settlement is not a bright-line test, but is based on the totality of the circumstances.*

Drasc first moves for a confirmation they have opted out of the Settlement, pursuant to Fed.R.Civ.P. 23(b)(2)(A). Rule 23(b)(2)(A) provides that the notice to each potential class member should include notice that "the court will exclude the member from the class if the member so requests by a specified date...." "The purpose of the rule requiring prompt notice of exclusion is to prevent parties from waiting to see if the adjudication in the class action is favorable before deciding whether to join the class." *In re Brand Name Prescription Drugs Antitrust Litigation*, 171 F.R.D. 213, 215 (N.D.Ill.1997), citing *In re Four Seasons Sec. Law Litigation*, 493 F.2d 1288 (10th Cir.1974). The relevant date in this case is October 10, 2019 – the opt out notice date identified within the Settlement Notice. The question then is whether Drasc's actions prior to October 10, 2019 were sufficient to show a desire to be excluded from the Settlement, i.e. intent to exclude themselves from the class.

In *In re Brand Name Prescription Drugs*, the U.S. District Court for the Northern District of Illinois applied a flexible "reasonable indication" standard in analyzing whether a party's actions constitute an election to opt out. 171 F.R.D. at 215–16. There, the court pointed to Wright & Miller's explanation for the appropriateness of "considerable flexibility…in determining what constitutes an effective expression of a class member's desire to exclude himself…"). *Id.*, quoting 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1787 (1986). See also, *In re Four Seasons Securities Laws Litigation*, 493 F.2d at 1291 (a "reasonable indication of a desire to opt out" is sufficient).

In *In re Brand Name Prescription Drugs*, the court found there was no evidence of a strategic wait-and-see approach by the plaintiff before deciding whether to opt out. *In re Brand Name Prescription Drugs*, 171 F.R.D. at 216. Therefore, when considering the totality of circumstances, the court determined the plaintiff "had taken sufficient steps, prior to the deadline, to demonstrate an intent to pursue its case independent of the class action." *Id*.

A number of other courts have likewise applied a rule favoring "considerable flexibility" and thus requiring only a "reasonable indication" of a desire to opt out. See, e.g., *Plummer v. Chemical Bank*, 668 F.2d 654, 657 n. 2 (2nd Cir.1982); *Council on Social Work Education, Inc. v. Texas Instruments Inc.*, 105 F.R.D. 68, 71 (N.D.Tex.1985), citing 2 Newberg, Class Actions § 2475r (1977). The Seventh Circuit has favorably commented on the rule set forth in *Four Seasons*. See *Sanders v. John Nuveen & Co.*, 524 F.2d 1064, 1075 (7th Cir.1975) (Stevens, J.).

  ii. ***Drasc's actions demonstrated their intent to not be bound by the Settlement, and Navistar's actions likewise demonstrated its recognition of that intent.***

Drasc clearly expressed their intent to not be included in the Settlement through their conduct in the Ohio Lawsuit. Likewise, Navistar's actions in the Ohio Lawsuit are proof it understood Drasc did not intend to be bound by the Settlement. On July 26, 2019, Drasc submitted a settlement demand to Navistar, which contained substantially different terms from the Settlement that this Court preliminarily approved a month prior. [Onest Dec. at ¶ 15]. If Drasc had intended to be a part of the Settlement, they would not have sent the demand.

Thereafter, the parties took numerous actions which unequivocally prove the parties' belief that Drasc's claims would be adjudicated outside the Settlement. The parties jointly conducted substantial litigation efforts during the settlement opt out period (17+ filings and exchanges) and after the expiration of the same (14+ filings and exchanges). Those efforts are detailed at paragraphs 20 and 21 of Attorney Matthew W. Onest's Declaration.

This factual timeline demonstrates Drasc's intent to have their claims decided in the Ohio Lawsuit. It separately demonstrates Navistar's understanding that Drasc did not intend to be part of the class.

**B. The Settlement Notice was deficient with respect to Drasc.**

    i. *The parties to the class action never informed this Court of the existence of the Ohio Lawsuit.*

A review of the docket in this matter indicates the parties never informed this Court of the existence of Drasc's Ohio Lawsuit. For instance, in the Motion and Memorandum for Preliminary Approval of Proposed Class Action Settlement (Dkt. 632), there is no reference to the Ohio Lawsuit.[1] Such omission is contrary to the intent of Rule 23, which contemplates providing the Court with full disclosure of pertinent facts—including the identification of pending litigation (if any)—for purposes of considering what claims would be released under an approved settlement:

> The parties should also supply the court with information about the likely range of litigated outcomes, and about the risks that might attend full litigation. Information about the extent of discovery completed in the litigation or in parallel actions may often be important. In addition, as suggested by Rule 23(b)(3)(B), ***the parties should provide information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal.***

Fed.R.Civ.P. 23, Advisory Committee Notes to 2018 Amendments. (Emphasis added).

The omission of Drasc's Ohio Lawsuit is the likely cause of a Settlement Notice that is deficient with respect to Drasc, both in terms of method of service and content.

---

[1] Likewise, the Joint Response to Pretrial Order No. 35 does not identify the Ohio Lawsuit. [Dkt. 750].

### ii. *The method of service was deficient with respect to Drasc.*

The Court "must direct to class members the best notice that is practicable under the circumstances." Fed.R.Civ.P. 23(c)(2)(B). "In order to satisfy due process considerations, notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 325 (N.D.Cal.2013), quoting *Silber v. Mabon*, 18 F.3d 1449 (9th Cir.1994). Depending on the circumstances, this "best notice" may involve U.S. mail, electronic means "*or other appropriate means*." Fed.R.Civ.P. 23(e)(2)(B) (Emphasis added.).

Here, Navistar was aware Drasc was represented by Ohio counsel who were actively litigating the Ohio Lawsuit before and after the Settlement Notice. Since May 2014, Navistar's counsel has filed and/or served hundreds of documents in the Ohio Lawsuit. Each time, Navistar's counsel served those documents on Drasc's counsel rather than on Drasc. Any other conduct would violate Rule 4.2 of the Model Rules of Professional Conduct.

Yet, the critical Settlement Notice was allegedly sent only to Drasc. No one ever informed Drasc's counsel of the notice until February 7. In order to comport with due process and to further Rule 23's stated goals, the Settlement Notice (or at least a copy thereof) should have been sent to Drasc's legal counsel, so they could review what, if anything, should be done, including submitting a formal opt out. To permit a defendant to subvert known counsel in pending litigation which will terminate by allegedly mailing notice only to the client completely undermines the purpose of the Rule 23 notice and any sense of fairness.

As stated within the Advisory Notes: "Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the 'traditional' methods are best may disregard contemporary communication realities. ***The ultimate goal of giving notice is to***

***enable class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or to make claims.***" (Emphasis added.). There is no better way to enable class members involved in pending parallel litigation to make informed decisions about their rights than to provide notice to their counsel.

Here, Navistar cannot possibly claim it did not have the email addresses of Drasc's counsel. Throughout the Ohio Lawsuit, Navistar used email service as the chief method of serving all pleadings, motions, and other filings. [Onest Dec. at ¶ 11]. Navistar's failure to use the "best notice" renders the Settlement Notice ineffective as to Drasc.

Finally, the relatively small number of represented parties in other pending state litigation further supports Drasc's position. There are apparently "4,600 unique purchasers" of the trucks at issue. [Dkt.632, p. 28]. Yet, there were only 31 pending state lawsuits, as of September 15, 2017. [Dkt. 269, pp. 34-36]. Even assuming additional lawsuits, like the Ohio Lawsuit, were filed after that date, the numbers are not so burdensome that notice to the attorneys of record in those cases was unduly prohibitive.

      iii.    ***The content of the Settlement Notice was deficient with respect to Drasc.***

"Notice must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Tijero*, 301 F.R.D. at 325–26, citing *Mendoza v. United States*, 623 F.2d 1338 (9th Cir.1980).

The Settlement Notice does not specifically inform Drasc that their pending independent lawsuit would be barred without submission of *a formal opt-out letter*. In similar circumstances, the court in *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62 (N.D. Cal. 1976) held that a class settlement notice was insufficient, as a matter of due process, to bar the claims in pending complaints:

> In the present case, the Notice of the proposed settlement of the *McCubbrey* suit satisfied due process criteria as to the vast majority of class members; however, **as to the small group of individuals engaged in ongoing litigation** against Boise Cascade, **we must conclude that the Notice failed to perform its function of providing an adequate basis for informed decision-making**. Nothing in the detailed, 29-page Notice would alert even a careful reader that he must satisfy the exclusion requirements or suffer the consequence of permitting his ongoing litigation to evaporate. The language of Option 1 (which respondents "elected" by failing to exclude themselves from the class) suggests that inaction will result in barring *future* litigation, not automatic termination of present suits. Nor does the language of Option 2 (specifying the opt-out procedure) advise class members that they must satisfy exclusion requirements to maintain the viability of independent litigation. From these serious omissions, we are compelled to conclude that the Notice did not provide respondents engaged in separate suits against Boise Cascade with adequate notice of their options under the proposed *McCubbrey* settlement.

*Id*. at 67-68 (Emphasis added).

In *McCubbrey*, the district court examined petitioners' claims that respondents, who were plaintiffs in state court suits who had not filed formal opt outs of the class settlement, were barred by *res judicata* from bringing actions on claims and issues addressed in the *McCubbrey* suit – the class action. *Id*. at 65. There were 10 respondents-plaintiffs who did not participate in the settlement and did not formally request exclusion from the class. *Id*. at 67.

The first group consisted of plaintiffs who filed lawsuits against the petitioner prior to receiving notice of the proposed class settlement of the class action. The court ultimately invalidated the notice of settlement as to those plaintiffs because it failed to adequately inform individuals involved in pending litigation that their separate lawsuits would be terminated. *Id*. at 68. Accordingly, the notice's language did not meet due process requirements of reasonableness established under the United States Supreme Court's decision in *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *Id*. at 68.

The Eastern District Court of Pennsylvania likewise approved of "allow[ing] parties to opt out when they had lawsuits pending that were filed before the notice period began and the

class action settlement notice was defective, in that it did not warn those parties with pending lawsuits that the pendency of those suits was not enough to signal an intention to opt out." *In re Imprelis Herbicide Marketing, Sales Practices & Products Liab. Litigation*, 2014 WL 6901120, *7, n. 5 (E.D. Pa. Dec. 5, 2014).

Here, the Settlement Notice was defective because it did not inform Drasc their pending lawsuit would terminate if they failed to submit a formal opt out. Thus, even if Drasc had received the notice (which they do not concede happened), the Notice would still be ineffective to cause the Ohio Lawsuit to be subsumed by the Settlement and thereby terminate.

Based on the foregoing, the Settlement Notice was defective as to Drasc because it failed to notify Drasc the Ohio Lawsuit would terminate if they did not formally opt out. And even if the Settlement Notice were not defective, Drasc reasonably indicated their intent to not be part of the Settlement. As a result, the Court should issue an Order excluding Drasc from the Settlement.

C. **Alternatively, equity counsels the Court to extend the opt out deadline or otherwise exclude Drasc from the Settlement.**

If the Court finds Drasc should have submitted a formal opt-out notice earlier, Drasc respectfully requests the Court permit them to opt out now under the equitable doctrine of "excusable neglect." Excusable neglect warrants equitable relief under Fed.R. Civ.P. 6(b) and 60(b)(1), including an extension of the deadline for opting out of the settlement class.

      i. *The Court has board equitable discretion to provide relief from the consequences of excusable neglect.*

The standard for an enlargement of time under Rule 6(b)(2) is "excusable neglect." *In re Brand Name Prescription Drugs Antitrust Litigation*, 171 F.R.D. at 215–16. The Supreme Court examined the same standard in the context of a different rule, but enunciated a rule which has then been applied to Rule 6(b)(2). The Court held the "neglect" prong of the standard includes

the failure to meet a deadline. See *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 394–95, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Court further held the excusable neglect determination is based on equity, "taking account of all relevant circumstances surrounding" the failure to meet the deadline. *Id*. at 395. The pertinent circumstances include (1) the danger of prejudice to other parties, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, and (4) whether the moving party acted in good faith. *Id*. A movant's negligence, in and of itself, will not prohibit enlargement. Instead, if the negligence is excusable, then enlargement is appropriate. *In re Brand Name Prescription Drugs Antitrust Litigation*, 171 F.R.D. at 215–16. See *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 262 Fed.Appx. 215, 219 (11th Cir.2008).

Moreover, as one circuit court has emphasized, application of the "excusable neglect" standard is part of a district court's overall equitable management of complex class actions:

> Indeed, courts typically analyze "late claims in class actions under the rubric of whether the claimant has shown 'excusable neglect.'" *In re Orthopedic Bone Screw Products Liab. Litig.*, 246 F.3d 315, 321 (3d Cir.2001). However, a principle that applies more expansively than the specific test for excusable neglect is that "[i]n class actions, courts have equitable powers to manage the litigation in order to promote judicial economy and fairness to litigants." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 313 (3d Cir.2003) (reopening opt-in period for a reasonable period of time to allow additional notice to all eligible plaintiffs). As our Court has observed,
>
>> [s]ettlement administration in a complex class action often requires courts to use their equitable powers under Rule 23 to manage the disparate interests competing over a finite pool of assets with which to satisfy the class. As stated in the Manual for Complex Litigation, '[t]he equitable powers of the court may be invoked to deal with other problems that commonly arise during administration of the settlement.' Manual for Complex Litigation (Third) § 30.47 (1995).
>
> *In re Orthopedic Bone Screw*, 246 F.3d at 321.

*Dasilva v. Esmor Correctional Services, Inc.*, 167 Fed.Appx. 303, 307 (3d Cir.2006).

> ii. *The balance of the Pioneer equitable considerations support permitting Drasc to exclude themselves from the Settlement.*

Drasc and their counsel operated throughout the relevant period on the good-faith belief Drasc was not part of a class action and therefore would not be included in any class settlement. [Onest Dec., at ¶ 24; Gordon Dec., at ¶ 10]. Under these circumstances, Rules 6(b) and 60(b)(1) authorize relief, and equity favors it.

**Prejudice.** Granting Drasc leave to opt out of the Settlement would not prejudice Navistar, the party-defendants, or the Named Plaintiffs. Excluding Drasc from the Settlement would not impact the enforceability of the Settlement. Nor would permitting Drasc to pursue the Ohio Lawsuit expand the litigation in this Court. The opt out issue appears to have no bearing on the remaining deadlines in this case and the actions in the Ohio Lawsuit would not affect the scope of the Settlement. On the other hand, Navistar will enjoy a windfall if Drasc is forced to accept the Settlement. Drasc would likely receive a few thousand dollars under the Settlement on claims with a potential litigation value of millions of dollars, particularly under Ohio fraud law. And although prejudice to the party seeking relief is not one of the explicit factors in the *Pioneer* test, the Supreme Court has stated that "all relevant circumstances" must be considered. *Pioneer*, 507 U.S. at 395. Consequently, the extraordinary prejudice to Drasc is a relevant circumstance here. By way of example, Drasc have submitted damage figures in excess of $2 Million and have expended tens of thousands of dollars in their individual litigation against Navistar dating back to May 2014. [Onest Dec., at ¶ 13].

**Length of Delay and Potential Effect on Judicial Proceedings.** The opt out period ended on October 10, 2019, and the settlement was approved and class certified recently on January 21, 2020. Drasc first learned of the Settlement Notice and its purported applicability to Drasc's independent lawsuit on February 7th. Granting Drasc the relief they request will not

have a material effect on the judicial proceedings in this litigation. Continuation of the Ohio Lawsuit will affect only the proceedings before the Ohio Court. That litigation will not use any of this Court's resources. Thus, the Court's current case management schedule will not be adversely affected by allowing Drasc to opt out now from the Settlement.

On the other hand, not permitting Drasc to opt out will adversely impact the Ohio Court. That court has invested significant judicial resources in the Ohio Lawsuit, dating back to 2014. That court has decided numerous motions, has held many hearings, has numerous motions presently pending, and has scheduled the trial for June 2020.

**The Reason for the Delay and Whether It Was Within the Reasonable Control of the Movant.** The delay in opting out was the result of Drasc not receiving the Settlement Notice and Navistar's counsel's failure to notify Drasc's counsel of the class action and the Settlement. Drasc's counsel had no communication with anyone, including Navistar and Navistar's counsel, concerning the issue prior to February 7th. [Onest Dec., at ¶ 25]. Once the issue came to light, Drasc's counsel immediately began its investigation of the class action docket and filings and the preparation of this motion.

**Good Faith.** Drasc and their counsel have acted in good faith. Their actions throughout the Ohio Lawsuit demonstrate their intent to litigate their claims separately from this class action. They neither sought nor attained any tactical advantage by not submitting an opt out letter. In fact, each of Drasc's actions was undertaken under the explicit understanding that the Ohio Lawsuit could and would continue on its own right.

Based on the *Pioneer* equitable factors, Drasc ask the Court to find that, if they were required to file an opt out letter to exclude themselves from the Settlement, their failure to do so was the result of excusable neglect. The lack of prejudice to Navistar, the great prejudice to

Drasc, the lack of detrimental impact on these proceedings, and the good faith of Drasc and their counsel outweigh any delay in filing an opt out letter.

## CONCLUSION

Based on the foregoing, Drasc respectfully asks the Court to enter an order modifying the judgment entered in connection with the Settlement by excluding Drasc from the Settlement or granting an extension of the opt out deadline so that Drasc can effectively submit their opt out letter now.

Respectfully submitted:

*/s/ Owen J. Rarric*
Owen J. Rarric (OH # 0075367)
 (Admitted *pro hac vice*), and
Matthew W. Onest (OH # 0087907)
 (Admitted *pro hac vice*), of
KRUGLIAK, WILKINS, GRIFFITHS
 & DOUGHERTY CO., L.P.A.
4775 Munson Street, N.W./P.O. Box 36963
Canton, Ohio 44735-6963
Phone: (330) 497-0700/Fax: (330) 497-4020
orarric@kwgd.com; monest@kwgd.com

ATTORNEYS FOR DRASC, INC. AND
S&C TRUCKS OF WINKLEPLECK, LTD.

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2020, the foregoing was served upon all counsel of record via the District Court of Northern District of Illinois's CM/ECF System.

*/s/ Owen J. Rarric*
Owen J. Rarric (OH # 0075367)
 (Admitted *pro hac vice*), of
KRUGLIAK, WILKINS, GRIFFITHS
 & DOUGHERTY CO., L.P.A.

ATTORNEYS FOR DRASC, INC. AND
S&C TRUCKS OF WINKLEPLECK, LTD.